Commonwealth *v.* Jackamowicz, Appellant.

314

Argued November 13, 1970. Before Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*John W. Packel*, Assistant Defender, with him *Vincent J. Ziccardi*, Defender, for appellant.

*James D. Crawford*, Deputy District Attorney, with him *Stephen J. Margolin* and *Milton M. Stein*, Assistant District Attorneys, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Eagen, June 28, 1971:

The appellant, Frank Jackamowicz, was tried before the same jury in Philadelphia on four separate indict-

ments. The first thereof charged that on September 5, 1967, Jackamowicz feloniously murdered Mary Corde, the operator of a rooming house in which he and his wife resided. The second indictment charged him with voluntary manslaughter, or that on the same date he "unlawfully killed" Mary Corde. The third indictment charged that on the same date Jackamowicz robbed Mary Corde after committing violence upon her. The fourth indictment charged that on the same date he committed an aggravated robbery on the person of Warren Russell, the caretaker of the Corde rooming house. The jury found Jackamowicz guilty on the voluntary manslaughter indictment and not guilty on the three other indictments. After a prison sentence of 5 to 12 years was imposed on the manslaughter conviction, Jackamowicz appealed. We reverse and order a new trial, because we are convinced that a confession used against the appellant at trial was secured by the police under such circumstances that its evidentiary use should have been denied.[1]

In pertinent part the record discloses the following.

A Philadelphia police officer, Charles Umbrell, a son of Mary Corde, heard of the assault on his mother shortly after it occurred. Together with Police Lieutenant Thomas Sturkey, he visited the Corde rooming house and by questioning those on the premises, learned that Jackamowicz and his wife had been seen having a dispute with Mary Corde shortly before she was found suffering from injuries apparently caused by an assault. The two officers then visited the hospital to see the victim and later proceeded to seek out the Jackamowiczes. About 2:00 a.m. on September 6th,

---

[1] A timely pretrial motion to suppress the confession was denied after an evidentiary hearing. A similar motion at trial was denied by the trial court on the ground that the order of the suppression hearing court controlled the question of admissibility, and it was for the jury to resolve the issue of voluntariness.

the wanted were found in a local bar and admittedly evidenced signs of having been drinking. They were handcuffed and transported to a police detective headquarters. About 4:30 a.m., Jackamowicz was transferred to Homicide Division Headquarters and on September 6th, he was placed in the Philadelphia Detention Center.

Some time after his arrest, but before his arrival at the Detention Center, Jackamowicz was severely assaulted. After his arrival at the Detention Center, he was placed in the prison hospital and the prison physician described his condition on admission in the following manner: ". . . he had multiple bruises of the face and his nose was swollen and he had a right subconjunctival hemorrhage of the right eye and badly bruised rib cage, mostly on the left, just generally in pain, banged up."[2]

The testimony at the hearing on the motion to suppress was in serious dispute as to the circumstances under which Jackamowicz received the before-mentioned injuries. According to the police witnesses, the only assault during the period involved occurred when Jackamowicz "broke away" while being escorted by Lieutenant Sturkey and Officer Umbrell to an office on the second floor of the Detective Headquarters Building and that the Lieutenant found it necessary to hit him with a "flatjack" in order to control him.[3] According to Jackamowicz, five officers, including Officer Umbrell, entered a cell where he was sitting following

---

[2] Jackamowicz remained in the prison hospital continuously until September 15th. For several days immediately thereafter, he was treated at the hospital as an "out patient." On September 27th, he was transferred to the Philadelphia General Hospital. The records of the Philadelphia General were "lost" and not available at the time of trial.

[3] Lieutenant Sturkey testified that he hit Jackamowicz only twice with the "flatjack" in the area of the nose.

his arrival at Detective Headquarters, and one of them put a gun to his forehead and said, "I'm going to blow you away"; that some of the officers then hit him with their fists and one hit him with a "blackjack" knocking him unconscious; that later, after being transferred to Homicide Headquarters, and having been ordered to remove all of his clothing, he complained to an officer about pain in the back and he was hit with a hard punch in the complained-of area.

Under what circumstances the assault or assaults occurred need not be resolved for the purpose of this opinion. It is undisputed that after Jackamowicz had been assaulted and seriously injured, he was questioned by a police officer for several hours with few and brief respites and without any semblance of medical aid being provided, and that it was during this period that the challenged confession was secured. Such a confession does not meet constitutional standards, even if all of the constitutional warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), were repeated a thousand times.

Evidentiary use of a confession by one accused of the commission of crime is constitutionally proscribed, unless it is first established by the Commonwealth that the confession was given freely and voluntarily. *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202 (1959), and *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A. 2d 426 (1968). In other words, the confession must be the free and unconstrained choice of the maker. If it is the product of circumstances which overbear the will of the accused to resist, it is not a voluntary confession and should be suppressed. *Spano v. New York* and *Commonwealth ex rel. Butler v. Rundle,* supra. From our examination of the instant record, the conclusion is inescapable that when the confession involved was secured, the will of Jackamowicz to resist was overborne, if not totally destroyed.

As aptly stated in *Spano v. New York,* supra, at 320-321, 79 S. Ct. 1205-1206: "The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves."

Even if Jackamowicz is guilty of the crime of which he stands convicted, the end does not justify the means, and this Court will not stand idly by and permit a conviction to stand which is based in substantial part on an incriminating confession secured from the defendant under unlawful circumstances.

In view of what has been said before, it is unnecessary to reach other asserted assignments of error.

Judgment reversed and a new trial ordered.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.