334 A.2d 653
COMMONWEALTH of Pennsylvania
v.
Carl WHITSON, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 8, 1974.

Decided March 18, 1975.

102

John J. Dean, John R. Cook, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., John M. Tighe, First Asst. Dist. Atty., Robert L. Eberhardt, D. Michael Fisher, Asst. Dist. Attys., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Carl Whitson, was tried by a judge and jury and found guilty of murder in the first degree.

Post-trial motions were denied, and appellant was sentenced to life imprisonment. This appeal followed.

On January 16, 1973, Mrs. Beverly Moore was walking in a westerly direction along Fifth Avenue in the City of Pittsburgh. A passing motorist observed Mrs. Moore and saw a tall, thin, black man with his arm around her back and his right arm in front of her, as if he were supporting her. A flash of light was seen near Mrs. Moore's face, and a gunshot was heard. As Mrs. Moore fell to the ground, the person whose arms were around her took her purse and entered the passenger side of a vehicle parked along the curb. A description of the automobile and its license plate number were furnished to the police, and investigation revealed that the auto belonged to appellant. Appellant was arrested, and confessed to the crime for which he was ultimately convicted.

Appellant first argues that his confession should have been excluded because it was the product of an illegal arrest. We do not agree. Appellant was arrested pursuant to a warrant that he alleges was defective because the magistrate was not presented with sufficient facts to establish probable cause. While agreeing with appellant's contention concerning the warrant, we are of the opinion that the knowledge possessed by the officer in charge of the investigation was sufficient to establish probable cause for a warrantless arrest. Officer Pampena, the officer in charge of the investigation, who dispatched the arresting officers, possessed the following information which would establish probable cause for a warrantless arrest: He knew that Mrs. Moore's assailant was a tall, black male; that after the shooting the assailant entered a car with license plates that proved ownership by Carl Whitson, appellant; that appellant was a security guard employed by Allied Detective Agency and was issued a .38-caliber revolver; and that .38-caliber shells were found near the murder scene. Based

upon this information, the officer in charge certainly possessed enough information to establish probable cause for appellant's arrest. See *Commonwealth v. Kenney*, 449 Pa. 562, 297 A.2d 794 (1972). Moreover, appellant's argument that the information possessed by Officer Pampena would not establish probable cause, because it was not possessed by the arresting officers, must fail. In *Kenney*, this issue was also raised and we dismissed it, stating:

". . . In the context of the present facts we do not believe it was necessary for the arresting officer to have knowledge of the information which supported the probable cause for arrest. The operative question is whether Lieutenant Patterson, the officer who ordered the arrest, had sufficient information to support a finding of probable cause." At page 566, 297 A.2d at page 796.

██ Appellant next argues that his confession was the product of an unnecessary delay between his arrest and arraignment, and, therefore, should have been excluded. We do not agree. Appellant was arrested on January 17, 1973, at or about 1:15 p.m., by officers of the Pittsburgh police force. He arrived at police headquarters at 2:15 p.m. and was advised of his rights. Appellant then gave police a statement in which he outlined his activities on the day of the murder. This initial interview lasted approximately thirty minutes. The police then left appellant alone and proceeded to check his story. At 6:00 p.m., appellant was again interviewed, and at 6:10 p.m. he gave an oral admission, which culminated in a formal statement concluded at 6:50 p.m. At 7:00 p.m., appellant was arraigned. In *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), we held that evidence reasonably related to an unnecessary delay between arrest and arraignment must be excluded. In the instant case, we are of the opinion that the delay between appellant's arrest and arraignment was not unnec-

**106**

essary. The record reveals that after appellant gave his initial statement to the police, in which he detailed his activities on the night of the murder, appellant was left alone and his story was checked by the police officers. In *Futch*, we held that a delay in arraignment caused by the necessity to investigate a defendant's story was permissible. In *Futch*, we adopted the reasoning of the District of Columbia Court of Appeals, wherein Judge Burger, now Chief Justice Burger, stated in his concurring opinion in *Adams v. United States*, 130 U.S.App.D.C. 203, 399 F.2d 574, 579 (1968) (concurring opinion) :

> " 'Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested.' *Adams v. United States*, 130 U.S.App.D.C. 203, 399 F.2d 574, 579 (1968) (concurring opinion)." 447 Pa. at page 392, 290 A.2d at page 418.

In the instant case, the record reveals that appellant's initial questioning ended at 2:47 p.m., and that from 2:47 p.m. until 5:45 p.m., appellant was left alone by the police while his story was checked out. At 5:45 p.m., appellant's questioning was resumed, with an oral admission coming at 6:10 p.m. Under these facts, we conclude that appellant's delay in arraignment was caused by a necessary step in the police process, the checking of his story, a reason sanctioned by this court in our *Futch* decision.

■ Appellant next argues that the warrant issued for the search of his automobile was defective because the reliability of the informant was not established before the issuing magistrate. We do not agree. The search warrant for appellant's automobile was based upon the testimony of Officer Nave, who related to the

magistrate that he received information from Detective Swearingen, who had spoken with an eyewitness who had given Swearingen a description of appellant and a description of the vehicle appellant had entered after the murder; the eyewitnesses' name was also given to the magistrate. In the facts of this case, the reliability of the informant was established because he was an eyewitness to the crime. See *United States v. Bell*, 457 F.2d 1231 (Fifth Circuit 1972). See also *Commonwealth v. Evans*, 210 Super. 454, 233 A.2d 585 (1971).

■ Appellant next argues that the trial judge committed prejudicial error in his charge. Appellant contends that the trial judge's summary of the evidence was prejudicial to his case because the judge did not review the testimony given on cross-examination of Commonwealth witnesses, but only that of the appellant himself. The record reveals that the judge merely recited several facts brought out on cross-examination of appellant, and instructed the jury that it was their recollection of the facts that was to form the basis of their decision, rather than his. Under these facts, we find no error in the trial judge's summation of the evidence.

■ Appellant finally argues that the trial judge prejudiced his case when he stated that counsel's motion for a mistrial was frivolous. This response to appellant's request for a mistrial was given at a side-bar conference, out of hearing of the jury, and could hardly have prejudiced appellant.

Judgment of sentence affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

NIX and MANDERINO, JJ., dissent.

ROBERTS, Justice (dissenting).

Appellant was arrested without a warrant in the City of Pittsburgh at 1:15 on a Wednesday afternoon, but not presented before a magistrate until 7:00 that evening. Of the intervening time, one hour was consumed in transporting appellant to the Public Safety Building and a mere fifteen minutes were utilized for routine administrative procedures incident to "docketing" the arrest. This record proclaims that appellant was not "taken without unnecessary delay before the proper issuing authority," as required by Rule 118(a) (now renumbered Rule 130, 19 P.S. Appendix) of the Pennsylvania Rules of Criminal Procedure. Because a taped statement extracted from appellant during that period of illegal delay was erroneously received in evidence against him, I dissent.

In ruling on post-trial motions, the trial court set out the following chronology of the period from arrest to arraignment:[1]

> 1:15–2:15 p.m. [Appellant] was arrested at 1:15 p.m. in the East Liberty section of Pittsburgh. Enroute the arresting officers refueled their vehicle and did not arrive at the Public Safety Building until 2:15 p.m. The first hour was devoted to transportation to police headquarters.
>
> 2:15 Detective Freeman advised [appellant] of his rights.
>
> 2:15–2:47 p.m. The detectives questioned [appellant], who gave a detailed [exculpatory] account of how

---

1. There is a slight discrepancy between this chronology and the finding of the suppression court that "Defendant Whitson . . . after *again being advised of his rights at 6:00 P.M.* confessed to participation . . . in a statement which was taped between 6:31 P.M. and 6:53 P.M. . . . and *which was preceded by an unrecorded conversation which began at 5:51 P.M.* in which defendant admitted participation in the crime." (emphasis added).

he spent the previous night when the crime occurred.

2:47–5:45 p.m.   Police investigated aspects of [appellant's] story in effort to verify it. Whitson remained in the detective bullpen and was not questioned by the police.

5:45   The police began the administrative chores of obtaining information such as name, address, age, education, etc.

6:00   [Appellant] was re-advised of his rights.

6:03   [Appellant] was given some food.

6:10   [Appellant] made an oral admission of his complicity.

6:30–6:53 p.m.   [Appellant] gave his confession which was taped.

7:00   [Appellant] was arraigned.

The Commonwealth recognizes, as it must, that the taped statement must be excluded if it is a product of a violation of Rule 118's command that an accused be brought before a magistrate "without unnecessary delay." *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972); *Commonwealth v. Sanders,* 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); see *Geiger Appeal,* 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973).

The Commonwealth does not contend that 7:00 was the earliest time at which a magistrate could be obtained to

conduct the arraignment. Rather, it claims that "the delay between arrest and arraignment . . . was due to the diligence of the Pittsburgh Police in investigating appellant's connection to the homicide," and therefore concludes that the delay was not "unnecessary." This argument demonstrates a fundamental misunderstanding of the requirements of Rule 118.

As Mr. Justice O'Brien wrote for this Court in *Commonwealth v. Cherry,* 457 Pa. 201, 205, 321 A.2d 611, 613 (1974):

> "Rule 118 of the Pennsylvania Rules of Criminal Procedure and our decision in *Futch,* supra, *are specifically designed to put a stop to the practice of arresting an individual and holding him during a lengthy period while continuing the investigation before arraigning him.* While it may be permissible to delay the arraignment of an arrested individual if he initially indicates a willingness to cooperate, in order to obtain information from him about co-suspects or other evidence so that such co-suspects or evidence might be speedily located while still in the vicinity, no such grounds can be claimed in the instant case." (emphasis added)

Moreover, we have already condemned the very practice involved in this case. In *Commonwealth v. Hancock,* 455 Pa. 583, 587, 317 A.2d 588, 591 (1974), Mr. Justice Nix wrote for the Court:

> "Here the Commonwealth seeks to excuse the delay by offering as the reason the need to review their files of unsolved robberies and to notify those victims to attend who gave descriptions of an assailant similar to the appearance of the appellant. Clearly this does not provide a basis for a finding that the delay was reasonable. *While we do not require that the investigatory process cease at the time of a warrantless arrest we do require compliance with Rule 118 prior to any investigative procedure conducted for the purpose of*

*gathering further evidence against the accused if that procedure is dependent upon the waiving of a constitutional right."* (emphasis added)

In this case, the interrogation could proceed only if appellant waived his constitutional right to remain silent, so it falls precisely under the principle relied upon in *Hancock*.[2]

In support of its contention that the delay in this case was not prohibited by Rule 118, the Commonwealth relies solely upon a passing reference in *Futch* to a casual dictum in the concurring opinion of Judge (now Chief Justice) Burger in *Adams v. United States*, 130 U.S. App.D.C. 203, 399 F.2d 574, 579 (1968):

"Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested."

This argument, however, simply ignores our more recent cases. Thus, for example, in *Commonwealth v. Williams*, 455 Pa. 569, 573, 319 A.2d 419, 421 (1974), we admonished:

"This Court has held pre-arraignment delay unnecessary unless required to administratively process an accused.

"The Commonwealth has not advanced administrative considerations to excuse the twenty-seven hour delay in arraignment. Rather, we are urged to justify this delay on the ground that it was necessary because police needed to corroborate appellant's statement and apprehend other participants in the crime.

2. The right waived in *Hancock* was the right to the presence of counsel at a lineup, but I can see no reason why the right to remain silent should be accorded less protection.

> *"It must be emphasized that pre-arraignment delay will always be unnecessary unless justified by administrative processing-fingerprinting, photographing, and the like."* (emphasis added, footnote and citations omitted)

Accord, *Commonwealth v. Dixon,* 454 Pa. 444, 447, 311 A.2d 613, 614 (1973).

The basis for this construction of Rule 118 may be found in the twin purposes of the requirement of prompt arraignment. One of these purposes was well stated by the United States Supreme Court in *McNabb v. United States,* 318 U.S. 332, 343–44, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943):

> "The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard— not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and selfconfident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime."

Although the "third degree" has now become less common, it is still practiced. See, e. g., *Commonwealth v. Jackamowicz,* 443 Pa. 313, 279 A.2d 7 (1971); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 150–56, 239 A.2d 426, 429–34 (1968). Moreover, the "evil implications of secret interrogation" include many subtle prac-

tices which, while not necessarily rendering the statement given involuntary, may present difficult questions in determining its voluntariness. See *Miranda v. Arizona*, 384 U.S. 436, 445–57, 86 S.Ct. 1602, 1612–19, 16 L.Ed. 694 (1966). Finally, long incommunicado detention is itself a factor which may render a statement involuntary. See *Commonwealth ex rel. Butler v. Rundle*, supra, 429 Pa. at 154–56, 239 A.2d at 431–34; *Culombe v. Connecticut*, 367 U.S. 568, 575–76, 81 S.Ct. 1860, 1869, 6 L.Ed.2d 1037 (1961). Rule 118 is designed to prevent such forbidden or suspect practices precisely because they are often difficult to detect and impossible to adequately redress. Only by insuring that the accused is brought before a magistrate *before* there is any occasion for use of such practices can this purpose be effectuated and the underlying constitutional rights fully protected.

The United States Supreme Court has reached the same conclusion in interpreting the federal equivalent of Rule 118. In *Mallory v. United States*, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957), Justice Frankfurter wrote for a unanimous Court:

"The scheme for initiating a federal prosecution is plainly defined. The police may not arrest upon mere suspicion but only on 'probable cause.' The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course, be 'booked' by the police. *But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt."* (emphasis added)

This aspect of the Rule is sufficient in itself to establish that delays in arraignment solely for the purpose of obtaining incriminatory statements are always unneces-

sary. *Commonwealth v. Johnson*, 459 Pa. 171, 172, 327 A.2d 618, 619 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 205, 321 A.2d 611, 612–13 (1974); *Commonwealth v. Williams*, 455 Pa. 569, 573–74, 319 A.2d 419, 421 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 446–47, 311 A.2d 613, 614 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 244–46, 301 A.2d 701, 703 (1973).

In this case, the only purpose of the second session of interrogation was to obtain incriminatory statements after the initial exculpatory statements had been found wanting. Although they were able to arraign appellant within seven minutes of the completion of his taped confession, the police made no effort to arraign him until after he had made an inculpatory statement. "Not until he had confessed, when any judicial caution had lost its purpose, did the police arraign him." *Mallory*, supra, 354 U.S. at 455, 77 S.Ct. at 1360. This fact not only shows unnecessary delay, but also undermines any claim that the purpose of the initial delay was the possible exculpation of appellant—as opposed to his incrimination by a means only slightly less direct than those condemned by our prior cases.[3]

Furthermore, there is another policy underlying Rule 118 which requires suppression. As we explained in *Commonwealth v. Dixon*, 454 Pa. 444, 446–47, 311 A.2d 613, 614 (1973), Rule 118 is also designed to effectuate the constitutional right to bail, whereby the accused may

**3.** While *Mallory* recognizes that "Circumstances may justify a brief delay between arrest and arraignment, as for instance where the story volunteered by the accused is susceptible of quick verification through third parties," 354 U.S. at 455, 77 S.Ct. at 1360, it seems doubtful that a story produced by over half an hour of interrogation may be described as "volunteered." Moreover, the passage just quoted is qualified by the very next sentence. "But the delay must not be of a nature to give opportunity for the extraction of a confession." Id. Here there was more than mere "opportunity for the extraction of a confession," as the police did more than verify a volunteered story—they returned to confront appellant with the weakness of his story in order to successfully extract a confession.

regain his liberty. Consequently, Mr. Justice Manderino, writing for the Court, reasoned:

> "The prohibition in Rule 118 against any unnecessary delay between an arrest by an accusatorial authority and a preliminary arraignment minimizes the possibility of any unnecessary abridgement of a citizen's liberty. Such an abridgement would, of course, be unconstitutional. The danger of any such unnecessary and unconstitutional restriction of liberty diminishes significantly when a citizen is brought swiftly before a neutral judicial authority, there to be informed of the charges and provided with an immediate and reasonable opportunity *to regain his liberty* by the posting of a reasonable bail. Thus, the delay between arrest and arraignment must be closely examined. The only delay permissible is that reasonably required for the administrative processing of the accused citizen."

Id. (emphasis in original).

The United States Supreme Court has very recently addressed a closely related issue involving the liberty of those arrested without judicial warrant.[4] Mr. Justice Powell wrote for a unanimous Court [5] in *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975):

> "[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, *and for a brief period of detention to take the administrative steps incident to arrest.* Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate.

4. Rule 118, by its terms, applies only to those arrested without a warrant.

5. While the Court was divided on another aspect of the case, all members joined in this portion of the opinion.

And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest, . . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." (emphasis added)

Moreover, the magistrate's judgment must be obtained "promptly after arrest." Id. at 125, 95 S.Ct. at 869. Essentially similar interests are involved when the question is the access of the accused to release on bail.

In short, the police may not delay arraignment solely in the hope of obtaining incriminating statements and they can have no authority to deny access to a magistrate for the purpose of seeking bail. I am therefore at a loss to know what legitimate police interest might be thought to justify delaying the arraignment.

The Commonwealth contends, of course, that the police were only seeking to verify appellant's account of his actions. However, this claim was well answered by Justice Frankfurter in *Mallory*:

"We cannot sanction this extended delay, resulting in confession, without subordinating the general rule of prompt arraignment to the discretion of arresting officers in finding exceptional circumstances for its disregard. In every case where the police resort to interrogation of an arrested person and secure a confession, they may well claim, and quite sincerely, that they were merely trying to check on the information given by him. Against such a claim and the evil potentialities of the practice for which it is urged stands Rule 5(a) as a barrier. . . . Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest, as

it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.' "

354 U.S. at 455–56, 77 S.Ct. at 1360.

Rule 118 at least requires that when a magistrate is readily available and the accused asserts his innocence at the outset, arraignment be delayed no longer than is required to complete necessary "administrative steps incident to arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975).

Neither can it be concluded that the confession bore no reasonable relation to the delay. Appellant had initially denied his guilt and only confessed after being held for several hours while the police gathered evidence designed to persuade him of the futility of denial. There is, of course, nothing improper about gathering such evidence or confronting appellant with it. However, by doing both before appellant had been arraigned the police engaged in forbidden exploitation of the illegal delay in arraignment. See *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974) (lineup); *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) (same). The confession is therefore the product of the unnecessary delay.

I would reverse appellant's conviction and remand for a new trial at which the challenged confession would be inadmissible.

MANDERINO, J., joins in this dissent.