## Commonwealth v. Bortz

*Richard R. Tomsho, Assistant District Attorney*, and *William H. Platt*, for Commonwealth.
*Richard J. Makoul*, for defendant.

DAVISON, *J.*, February 26, 1979—We have before us, following his conviction in a trial without jury of the crimes of possession and possession with intent to deliver the controlled substances methaqualone (Quaaludes) and marijuana,* the defendant's motion in arrest of judgment and for a new trial.

---

*Act of April 14, 1972, P.L. 233, sec. 13(a)(16) and (30), 35 P.S. §780-113(a)(16) and (30).

Since the sole issues raised by the post-trial motions relate to the refusal to suppress evidence, the facts found by The Honorable Donald E. Wieand, the suppression judge, in his opinion and order are significant:

"On December 21, 1977, at or about 11:30 o'clock, A.M., Charles Davis and Ray Martuzzi, agents of the Drug Enforcement Agency working from the Philadelphia International Airport, appeared at the State Police Barracks [at Bethlehem, Pennsylvania] and related to Tpr. Thomas M. Marchetti the following information. On December 18, 1977, at approximately 5:35 o'clock, P.M., John Sciortino, a freight agent employed by United Air Lines at Los Angeles International Airport, received from two white males a package for shipment to Barry Bortz at ABE Airport in Allentown, Pennsylvania. The sender of the package purported to be Hide and Sea Leather Company, 503 Washington Street, Marina Del Rey, California. Because the package was lighter then Sciortino anticipated for leather goods, he proceeded to open the package in the presence of another freight agent. Inside the package was a Pampers diaper box containing a paper bag with five vials. Four of the vials contained one hundred tablets of Quaaludes. The fifth vial contained about sixty tablets.

"Sciortino then notified his supervisor, who in turn notified the Airport Police. On December 19, 1977, one vial and sixty tablets were retained by the police as evidence. The remaining tablets and four vials were shipped to the ABE Airport. This information was then communicated to Agent Charles Davis in Philadelphia.

"The package arrived at ABE Airport on December 21, 1977, and on December 22, 1977, the

defendant, Barry Bortz, asked for and received the package. As Bortz left the freight office he was placed under arrest by members of the Pennsylvania State Police. They advised Bortz of his rights under Miranda, and he responded that he understood the same. Bortz stated that his car was parked in front of the terminal doors and asked if it could be moved. When he was told that the police would take it to their barracks if Bortz wished, he replied affirmatively and delivered the keys to Cpl. Ralph J. Marinetti.

"At police barracks, an inventory was made of the contents of the Bortz vehicle. In making such an inventory the police opened the trunk where they found and opened a shoe bag which was lying on top of various sporting equipment. Inside they found marijuana."

Defendant first contends that the finding that Sciortino and Gene Cruz were civilian freight agents and not police officers is inadequately supported by the hearing record in that the only evidence as to their identities as civilians was hearsay evidence. Second, he contends that the evidence fails to support the finding that the search of his vehicle at the State Police Barracks was an inventory and not a search for evidence.

We turn first to the hearsay issue. In this regard, it is clear that the findings of the suppression court are to be affirmed if they are supported by the record: Com. v. Hall, 475 Pa. 482, 380 A. 2d 1238 (1977); Com. v. Diggs, 254 Pa. Superior Ct. 262, 385 A. 2d 1010 (1978).

The Commonwealth has the burden at a suppression hearing of showing the admissibility of challenged evidence: Com. v. Yount, 455 Pa. 303, 314 A. 2d 242 (1974); Com. v. Mazzella, 231 Pa.

Superior Ct. 247, 331 A. 2d 784 (1974). In order to show the admissibility of the Quaalude evidence here, the Commonwealth was required to demonstrate that the arresting officers had information sufficient to give them probable cause to arrest and that the relied-upon information was not tainted, as, for example, by a prior illegal search. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Com. v. Knowles, 459 Pa. 70, 327 A. 2d 19 (1974); Com. v. Shaw, 476 Pa. 543, 383 A. 2d 496 (1978).

To establish the existence of probable cause to arrest, the arresting officer testified as to the information he had received from Drug Enforcement Agency (DEA) officers in Philadelphia, who, in turn, had received the information from California authorities, to the effect that a package addressed to defendant had been opened in Los Angeles and found to contain Quaaludes, and that the package was being shipped to Allentown. While the arresting officer's probable cause was thus based on hearsay, the courts have held that the use of hearsay information is valid to establish probable cause: Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959); Com. v. Dickerson, 468 Pa. 599, 364 A. 2d 677 (1976). Even multiple hearsay, when passed through a reliable chain of communication, may be used to establish probable cause: United States v. Dento, 382 F. 2d 361 (3d Cir. 1967), cert. denied 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed. 2d 299, reh. denied 389 U.S. 997, 88 S.Ct. 493, 19 L.Ed. 2d 502 (1967).

There is no question that the record supports the conclusion that the arresting officers had probable cause to arrest, and the defendant does not seriously contest that finding. He does assert, however,

that although the Commonwealth may have established probable cause to arrest, and that doing so by the use of hearsay was not improper, hearsay should not have been admitted to establish the identity of Sciortino and Cruz as civilian freight agents. The record demonstrates that the only identification of Sciortino and Cruz as freight agents was through the testimony of the arresting officer, who had knowledge of that fact only because the DEA officers in Philadelphia had told him so. The defendant argues that probable cause to arrest is one element the Commonwealth must prove in order to gain admission of seized evidence, but, that a second wholly independent element requiring proof is that the information on which probable cause was based was not obtained illegally. This second element may not, defendant contends, be shown by hearsay. In this case, that second element would consist of proof that the package was initially opened in California by civilians, since searches by civilians are not subject to the Fourth Amendment: Com. v. Dingfelt, 227 Pa. Superior Ct. 380, 323 A. 2d 145 (1974); and the record shows that there would have been no probable cause for any police search of the package in California.

We see no basis for adopting the distinction urged by the defendant that hearsay may be used to prove probable cause to arrest but not to prove the absence of taint, that is, that the package was initially opened by civilians. The defendant cites no authority, and we find none, which draws that distinction. In those cases involving the analogous factual situation of probable cause based on an informer's tip, where the Commonwealth must show not only that the information received was sufficient to create probable cause but also that the informer is

reliable, our courts have treated those two questions as one. See Com. v. Brooks, 468 Pa. 547, 364 A. 2d 652 (1976). The informer's reliability is deemed part and parcel of the broader issue of probable cause, and, as such, the cases holding that hearsay is admissible to prove probable cause apply. Thus, it is permissible that the arresting officer received knowledge of the informer's reliability from other officers, that is, from a hearsay source. See Com. v. Samuels, 235 Pa. Superior Ct. 192, 340 A. 2d 880 (1975). Similarly, the issue of the identities of Sciortino and Cruz is part and parcel of the general issue of probable cause so that no infirmity attaches to the arresting officer having relied upon hearsay to establish those identities.

Additionally, as Judge Wieand observed in his adjudication, police officers may rely on information available to other officers in order to establish probable cause: Com. v. Whitson, 461 Pa. 101, 334 A. 2d 653 (1975); Com. v. Rush, 459 Pa. 23, 326 A. 2d 340 (1974). That reliance may extend to information in the hands of officers more than once removed from the arresting officer as long as the "chain of information . . . [is] constructed with reliable links." United States v. Dento, supra. The information in the possession of law enforcement agents was that the Quaaludes had initially been discovered by airline freight agents. The arresting officers in Allentown could properly rely on this information in establishing probable cause, and could testify to it at the suppression hearing. We agree with Judge Wieand's conclusion in his adjudication that the local police "were not required to initiate an independent investigation . . . concerning the events occurring in California . . .," and that the Commonwealth was not required to

call Sciortino and Cruz from 3,000 miles away to establish their identities.

Defendant's remaining contention is that the marijuana evidence should have been suppressed because its seizure was not pursuant to an inventory but to a search for evidence without probable cause. We conclude, however, that the record supports the conclusion that the marijuana was discovered during an inventory.

Police use of inventories has been approved in Pennsylvania: Com. v. Scott, 469 Pa. 258, 365 A. 2d 140 (1976); Com. v. Brandt, 244 Pa. Superior Ct. 154, 366 A. 2d 1238 (1976); Com. v. Randle, 248 Pa. Superior Ct. 239, 375 A. 2d 76 (1977). In order to justify the examination of a vehicle's contents as an inventory, the Commonwealth must prove that the vehicle was lawfully within police custody and that the search was in fact an inventory as opposed to a search for evidence: Com. v. Brandt, supra at 162.

The vehicle here was properly in police custody in that the defendant consented to police removal of it to their headquarters. See Schwasta v. United States, 392 A. 2d 1071 (D.C. Ct. App. 1978). As to whether the search was in fact an inventory, we have considered, as the cases suggest, several factors, including the scope of the search, the procedure utilized for the search, whether any items of value were in plain view, the reasons for and the nature of the custody, and the anticipated length of the custody: South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000 (1976); Com. v. Brandt, supra; Com. v. Burgwin, 254 Pa. Superior Ct. 417, 386 A. 2d 19 (1978) (3-3 decision). Here, the scope of the search was reasonable and in conformity with the purpose of such searches to

protect police from claims of loss, and the procedure utilized a standard one adopted by the Pennsylvania State Police. Although no items of value were in plain view, we are satisfied that the totality of the evidence on the record indicates the purpose of the search was to inventory items in the vehicle. As Judge Wieand observed:

"Indeed at this point in time, the police had caught defendant red-handed and had already taken custody of sufficient evidence to obtain a conviction. There was no need to search his vehicle for additional evidence."

At oral argument before the court en banc, the Commonwealth contended that the hearsay issue had not been properly raised in defendant's initial pre-trial motion to suppress and therefore was not properly before the court. We conclude, however, that the issue has been raised with the requisite specificity required by the Pa.R.Crim.P. 306(b), and , in any event, the Commonwealth waived such objection when it failed to raise it at the suppression hearing.

In sum, the record supports the conclusion that the initial arrest was based on untainted probable cause, that the vehicle was lawfully in custody, and that the marijuana was seized during a lawful inventory. We are thus obliged to deny defendant's post trial motions.

## ORDER

Now, February 26, 1979, after due consideration of the briefs and oral argument, and for the reasons set forth in the accompanying opinion, it is ordered that the defendant's post trial motions be and the same are hereby denied; and that the defendant

appear for sentencing on April 19, 1979, at 9:30 o'clock a.m., in Courtroom No. 3; the Lehigh County Probation Department to prepare a pre-sentence investigation and report.