438 A.2d 995

**COMMONWEALTH of Pennsylvania,**

v.

**Allen T. MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1980.

Filed Dec. 18, 1981.

Petition for Allowance of Appeal
Denied June 28, 1982.

282

Louis Lipschitz, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was indicted at Nos. 118 (assault and battery, aggravated assault and battery and assault with intent to murder), 119 (aggravated robbery), and 120 (burglary).[1] A suppression hearing was conducted, after which the court denied the motion to suppress. Defendant was tried and convicted of all the above charges. Post-trial motions were made orally, argued and denied. Appellant was sentenced to a total term of thirteen and one-half (13½) to forty-seven (47) years in prison. This court affirmed the judgments of sentence at *Commonwealth v. Miller,* 243 Pa.Superior Ct.

---

1. He was also charged at No. 153, with carrying a firearm on public streets, of which he was acquitted.

582, 371 A.2d 234 (1976) (per curiam).[2] The Supreme Court denied allowance to appeal. Appellant had been represented by the Defenders Association throughout the above proceedings.

Subsequently, appellant filed a Post Conviction Hearing Act petition. New counsel was appointed to represent appellant. Following a hearing on appellant's PCHA petition the court denied relief. An appeal was taken to this court. Such appeal was nonprossed but later reinstated. Appellant obtained new counsel not associated with the Defenders Association for this appeal.

Appellant raises five questions on this appeal, all of which attack the effectiveness of all previous counsel. None of these issues were raised below.[3] We have rearranged the order of these contentions, reserving appellant's first contention for consideration last.

Appellant's second and third contention both pertain to the pre-trial line-up identification; these will be considered jointly. He first argues that post conviction hearing counsel was ineffective in failing to argue that previous counsel was ineffective in failing to preserve the contention that the line-up was a product of unnecessary delay between arrest and arraignment. Next he similarly argues counsel's effectiveness for not challenging the line-up as being the tainted fruit of an illegal arrest.

Before inquiring into these claims we must determine whether the claim which counsel is charged with failing to pursue was a frivolous one. See, *Commonwealth v. Humphrey*, 473 Pa. 533, 375 A.2d 717 (1977); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). *Commonwealth v. Gaston*, 474 Pa. 218, 378 A.2d 297 (1977). "Only if the

2. Appellant did not raise in his prior appeal the issues he raises on this appeal.

3. In his PCHA petition appellant claimed that trial counsel was ineffective in indicating to the court that appellant had a prior record which foreclosed appellant from testifying on his own behalf and that the trial court improperly imposed upon him the burden of presenting an affirmative alibi defense.

claim which was foregone was of arguable merit must we inquire into counsel's reasons for not pursuing it. *Commonwealth v. Hubbard*, 472 Pa. 259, 277–78, 372 A.2d 687, 695–96 (1977)". *Commonwealth v. Gasper*, 262 Pa.Superior Ct. 141, 396 A.2d 685 (1978).

Appellant was arrested at 4:00 p. m. on April 18, 1973. A line-up including appellant was conducted at 5:50 p. m. viewed by Hilda Snead, who tentatively identified appellant as the gunman. A second line-up was held on April 19, 1973 at 12:15 p. m.; a Mr. Rosenberg and a Mr. Lazier identified the appellant as the actor who had shot them. Both of these witnesses had been hospitalized from the time of the shooting until shortly before the line-ups. Appellant was arraigned sometime thereafter.

A. Appellant specifically argues that previous counsel was ineffective in not questioning the above delayed arraignment which he argues invalidates any pre-trial as well as in trial identification of appellant. He contends that under Rule 116 Pa.R.Crim.P. (now renumbered Rule 122) the identifications should have been suppressed. Rule 116[4] (now Rule 122) reads:

> When a defendant has been arrested, with a warrant, within the county where the warrant of arrest was issued, where the complaint charges a court case, he shall be taken without unnecessary delay before the issuing authority whose name appears upon the warrant for preliminary arraignment.

The leading case in this area is *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). In *Futch*, the Supreme Court found a 14 hour delay to be an "unnecessary delay." The court found that Futch had refused to sign a waiver-of-counsel form for the line-up. It also determined that the waiver was misleading and found the line-up was suggestive. Accordingly, the court found the identification evidence resulting from such a line-up should have been excluded. However, the court "held that failure to comply with

---

**4.** Rule 118, [Now numbered Rule 130] establishes a similar requirement as to warrantless arrests.

Rule 118 [116] does not ipso facto render inadmissible evidence obtained by the police during the 'unnecessary delay' and that it is incumbent upon defendant to show some prejudice from the delay." *Id.*, 447 Pa. at 393, 290 A.2d 417. The court, 447 Pa. at page 392, 290 A.2d 417, quoted Judge, now Chief Justice Burger:

> "Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested." *Adams v. United States*, 399 F.2d 574, 579 (D.C.Cir.1968) (concurring opinion).

Quoted also in *Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1975), and *Commonwealth v. Rose*, 265 Pa.Superior Ct. 159, 401 A.2d 1148 (1979).

■ *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419 (1974) reviewing the cases preceding it "delineated a three-part test to be used when inquiring into an alleged violation of Rule 118 [116]. The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay." (Cites deleted). We find that the delay was not "unnecessary." The 19½ hour or more delay was precipitated by the victims' need to recuperate from their wounds. The other identifying witness, Snead, was tentative in her identification of Miller. As the Commonwealth contends the police needed a better identification in order to be reasonably certain that appellant was the culprit.

> There are necessary delays in every criminal case during which administrative details like booking, fingerprinting and some preliminary investigation concerning the nature of the crime and the arrested persons connection thereto must be explored. *Adams v. United States*, 130 U.S.App. D.C. 203, 399 F.2d 574, 579 (1968) (Concurring Opinion, Burger, J.). This is the type of necessary delay involved in the case before us. While appellant was going through

the administrative procedures on [one set of] charges, the police began receiving new information and evidence on the similarities of the crime to that of the [other] incidents. It was during this time that appellant was held.

Case law supports this finding. In *Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1975), the delay between the time of arrest and arraignment was deemed a necessary step by police while they checked on defendant's history. In *Commonwealth v. Terry*, 457 Pa. 185, 321 A.2d 654 (1974), the delay was also held necessary, while police compiled lists of names of accomplices along with other administrative details.

*Commonwealth v. Rose*, 265 Pa.Superior Ct. 159, 167, 401 A.2d 1148 (1979). But cf. *Commonwealth v. Eaddy*, 472 Pa. 409, 372 A.2d 759 (1977) (where court found no justification had been established for the delay, and concluded it was unnecessary.).

We also, fail to see how the identification was reasonably related to the delay. While appellant argues that he was held without being arraigned until he could be more definitely identified we fail to see how the identification was a result of the delay.

In the present case, appellant does not attack the lineup proceedings [for which he waived his right to have counsel present. Nor does he challenge such waiver.] Nor does he claim that the lineup was of a suggestive nature. His only argument is that the identifications made at the lineup should not have been admitted at trial because the lineup was held during an unnecessary delay prior to his preliminary arraignment. Unlike the appellant in *Futch*, had the appellant in this case been taken before a magistrate prior to the lineup, he would have found himself in no better position. We cannot say that appellant was prejudiced by the delay.

*Commonwealth v. Corbett*, 228 Pa.Superior Ct. 292, 323 A.2d 836 (1974). In this respect the current appeal differs from such cases as *Commonwealth v. Segers*, 479 Pa. 108, 387 A.2d 858 (1978) (over 15 hour delay between arrest and inculpato-

ry statement), *Commonwealth v. Gaston*, 474 Pa. 218, 378 A.2d 297 (1977) (18 hour delay between arrest and statement) and *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) (confession obtained 8 hours after arrest) where the court found the incriminating statements resulted from the delay. And as previously noted this case differs from *Futch* in that appellant waived his right to counsel where Futch clearly refused to waive such right and where the line-up was found to be suggestive. Here appellant does not claim the line-up was suggestive and from our review of the suppression hearing we find that it was not suggestive.

B. We next direct our attention to appellant's claim that prior counsel was ineffective in failing to pursue a challenge to the arrest. He argues that the Commonwealth was without probable cause to arrest him and therefore the subsequent lineup identifications were tainted by the illegal arrest.

... Probable cause has been defined as those facts and circumstances available at the time of the arrest which would justify a reasonably prudent man in the belief that a crime has been committed and that the individual arrested was the probable perpetrator. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975); *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Daniels*, 455 Pa. 552, 317 A.2d 237 (1974); *Commonwealth v. Mamon*, 449 Pa. 249, 297 A.2d 471 (1972); *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A.2d 675 (1968). The test is not one of certainties but rather one of probabilities dealing with the considerations of everyday life. It is not equivalent to the "proof beyond a reasonable doubt" standard applied at trial. See *Commonwealth v. Jones*, supra; *Commonwealth v. Williams*, 235 Pa.Super. 347, 341 A.2d 201 (1975), and cases cited supra.

*Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677 (1976).

Miss Snead, an eyewitness to the events described the assailant, shortly after the shooting as "a Negro man; I said he was kind of light-brown skinned, about 20 or 21 years old, with a thin mustache and a short bushy haircut". (N.T. Suppression p. 11). This witness was first shown seven or eight black and white photographs; she did not identify the actor from this array. She was then shown color slides; "quite a few, and [appellant's picture] was the only one that I said looked the most like this person that I remember seeing in the store." (N.T. Suppression p. 12).[5] Mr. Rosenberg, one of the victims described the actor as "a Negro male, approximately five-foot six inches, 21 years old or so . . . a small mustache and short kinky hair . . . he was thin," (N.T. Suppression p. 32). Mr. Lazier the other shooting victim described the assailant as "five-feet-six inches . . . has a slight bush . . . a little thin mustache, tan-colored skin." (N.T. Suppression p. 47).

Appellant contends that probable cause to arrest was lacking because the [identification by Snead was not even tentative] and because the other information possessed by the officer was uncorroborated. However, it is established in this Commonwealth that tentative identifications are sufficient even to sustain a conviction. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). Certainly, no more is required for an arrest. Furthermore, it has never been the law of the Commonwealth that a victim's statements must be corroborated before an arrest can be made.

*Commonwealth v. Wiggins*, 239 Pa.Superior Ct. 256, 261, 361 A.2d 750 (1976).

■ Appellant's physical appearance matched the descriptions given and according to Miss Snead he looked most like the person whom she saw. In the circumstances of this case we find that a reasonably prudent man would be justified in believing appellant was the probable perpetrator of the crime.

5. The witness was shown "twenty or more" photographs the second time. (N.T. Suppression p. 15).

■ C. Appellant argues counsel was ineffective in failing to protect appellant's right to allocution at the time of sentencing. Rule 1405(a) Pa.R.Crim.P. reads:

At the time of sentencing, the judge shall:

(a) afford the defendant the opportunity to make a statement in his own behalf and afford counsel for both parties an opportunity to present argument and information relative to sentencing;

Prior to the imposition of sentence, defense counsel argued on behalf of appellant. Appellant's mother and father were also permitted to speak. Appellant was afforded an opportunity to address the court immediately after sentencing. He argued, as his parents had, that he had not committed the crimes for which he stood convicted. (N.T. Sentencing p. 20).

While technically appellant's claim may be correct, we find no relief is necessitated. Appellant was permitted to speak, though after actual sentencing, at which time he declared his innocence. In *Commonwealth v. Lowry*, 260 Pa.Superior Ct. 454, 394 A.2d 1015 (1978), this court held that the defendant's denial of allocution had been remedied at his Post Conviction Hearing where the court asked what he would have said at sentencing. The hearing court found that what the defendant desired to say would not have altered the sentence. The present case is much clearer than *Lowry*, here the trial judge allowed appellant to speak within minutes of the sentencing at which time he claimed he was not guilty. Also, we believe *Commonwealth v. Knighton*, 490 Pa. 16, 415 A.2d 9 (1980), reversing this court at 251 Pa.Superior Ct. 299, 380 A.2d 789 (1977) is distinguishable from the present case. There the Supreme Court remanded for resentencing on the basis of a very unusual set of circumstances. The trial judge clearly indicated his personal animosity for the defendant (he refused to recuse himself); he imposed sentence based entirely on a "sentencing council's" determination; and he explicitly denied the defendant an opportunity to address the court, though he did later allow the defendant to speak, though sentence had

already been determined, though not imposed. The court remanded for resentencing before another judge. We do *not* find that a similar result is required here.

As appellant was not effectively denied his right to speak, counsel may not be held ineffective for failing to preserve such challenge.

■ D. Appellant contends that prior counsel was ineffective in failing to preserve the issue of the validity of his jury trial waiver. In particular he argues that the court failed to explain that the jurors would be selected from the community.

*Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973) listed the "essential ingredients" of a jury trial to include the requirement that "the jurors be chosen from members of the community (a jury of one's peers) . . . " *Id.*, 454 Pa. at 373, 312 A.2d 597. However, *Williams* has been held not to be applicable retroactively. *Commonwealth v. Lockhart*, 227 Pa.Superior Ct. 503, 322 A.2d 707 (1974). See also *Commonwealth v. Dyson*, 249 Pa.Superior Ct. 503, 378 A.2d 408 (1977) and *Commonwealth v. Grant*, 235 Pa.Superior Ct. 357, 341 A.2d 511 (1975). Appellant's case was tried prior to the decision in *Williams*. Accordingly, his pre-*Williams* jury trial waiver will be held invalid only if it was entered involuntarily or unknowingly. Except for the above claim appellant cites no other reason for voiding such waiver. Nor, after reviewing the record of the colloquys do we find any other indication that the waiver of a jury trial was anything but voluntarily and knowingly entered.

E. Appellant's final allegation of error is that he was denied effective assistance of counsel by previous counsel's failure to preserve the issue that he was not advised of his post-trial rights pursuant to Rule 1123, Pa.R.Crim.P. 1123 reads in pertinent part as follows:

> (b) If the defendant agrees on the record, the post-verdict motions may be made orally at the conclusion of the trial. The defendant may also within the seven (7)-day

period[6] on the record voluntarily and understandingly waive the filing of post-verdict motions. Prior to the acceptance of such waiver the trial judge shall, pursuant to paragraph (c) of this Rule, advise the defendant on the record that his waiving of post-verdict motions shall preclude his raising on appeal any issues which might have been raised in such motions.

(c) Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of his right to file post-verdict motions and of his right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that only the grounds contained in such motions may be raised on appeal.

■ Appellant contends that had the lower court advised him appropriately and had counsel proceeded accordingly, the aforementioned issues A, B, C, and D would have been raised both in post-verdict motions and on direct appeal. However, as we have reviewed the substance of appellant's claims, without ascertaining whether they were waived, appellant has not been prejudiced by the failure to raise such issues on direct appeal. He therefore is entitled to no further relief. As the Supreme Court held in *Commonwealth v. Velasquez*, 488 Pa. 244, 246–47, 412 A.2d 489 (1980):

> [A]ppellant seeks as alternative relief a remand to the lower court for the filing and disposition of post-verdict motions. The basis offered for this request is the alleged failure of the trial judge to properly advise appellant under Pa.R.C.P. 1123(c). The issues that appellant urges were foreclosed during the original direct appeal, as a result of this alleged failure to properly explain Rule 1123(c), are the same issues raised in this collateral attack under the rubric of ineffective assistance. Since we have determined that these issues were not of arguable merit,

6. Subsequent to appellant's trial (b) was amended to allow for a ten (10) day period.

*Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979), appellant has not in any way been prejudiced by the fact that he was unable to pursue them on direct appeal. Thus, no purpose would be served by remanding the cause at this time.

Order affirmed.