401 A.2d 1325

COMMONWEALTH of Pennsylvania

v.

Donald David TREFTZ, Appellant.

Supreme Court of Pennsylvania.

Argued March 13, 1979.

Decided May 1, 1979.

Reargument Denied June 25, 1979.

Richard A. Peterson, Peterson & Gula, Greenville, for appellant.

David B. Douds, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

Appellant was convicted of murder of the first degree in the Mercer County Court of Common Pleas and his conviction was affirmed by this Court in *Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265 (1976). Appellant subsequently filed a petition under the Post-Conviction Hearing Act (PCHA) [1], and following a hearing, relief was denied. This appeal follows wherein appellant raises eight issues, all of which concern the effectiveness of his trial counsel.

This Court held in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605–06, 235 A.2d 349, 352–53 (1967) that:

counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." [Emphasis in original]

"As a corollary, counsel is not ineffective for failing to raise baseless or frivolous issues." *Commonwealth v. Wilson,* 482 Pa. 350, 393 A.2d 1141, 1143 (1978).

Further, "[t]he findings of the PCHA court, which hears the evidence and passes on the credibility of the witnesses, should be given great deference. . . . Consequently, this Court will not disturb its findings if they are supported in the PCHA record. . . . This is true even when the record could support a contrary holding." *Commonwealth v. Lee,* 478 Pa. 70, 75, 385 A.2d 1317, 1320 (1978).

■ Appellant's first contention is that his trial counsel was ineffective on the grounds that he did not impeach the

1. Post-Conviction Hearing Act of 1966, Act of January 25, 1966, P.L. (1965) 1580, § 1, *et seq.,* 19 P.S. § 1180–1, *et seq.* (Supp.1978–79).

credibility of Mary Gilkey (the Commonwealth's principal witness) by calling Barbara Gobel as a witness.

At trial, Mary Gilkey testified that on the evening of October 13, 1973, a meeting of a chapter of the Breed Motorcycle Club took place in the kitchen of her home. This meeting was attended by appellant Treftz, John Gilkey (Mary Gilkey's husband), and six other individuals including the deceased, who was a prospective member of the organization. The Gilkeys' four-year old son was also present at the meeting.

Mrs. Gilkey testified that although she did not attend this meeting, she was in the living room of her house while the meeting took place. Mrs. Gilkey testified that when, during the meeting, she heard a loud crash in the kitchen and the screams of her young son, she went into the kitchen and observed the deceased lying on the kitchen floor with blood on his face and arms. Mrs. Gilkey went back into the living room. Approximately five minutes later, upon hearing the screaming (again) of her young son and the back door of her house open, Mrs. Gilkey returned to the kitchen and observed the deceased lying outside the back door. Mrs. Gilkey testified that one of the Breed members said to the deceased, "You're as good as dead" and then challengingly questioned appellant, "You're the President of this club, what are you going to do about it, the Ohio Club."

Mrs. Gilkey testified that she saw appellant walk out the back door with a gun in his hand. She started to walk back to the living room with her young son and she heard two shots, followed by several more shots. The record indicates that the deceased's body was discovered thirteen days later behind the Gilkeys' house.

Appellant argues that trial counsel should have impeached Mary Gilkey's testimony by calling Barbara Gobel as a witness who would have testified 1) that she (Barbara Gobel) was with Mrs. Gilkey in the living room while the aforementioned meeting was taking place in the kitchen and 2) that during the meeting, Mrs. Gilkey never left the living room to go into the kitchen.

At the PCHA hearing, trial counsel testified that even though Barbara Gobel told him that Mrs. Gilkey never went into the kitchen while the aforementioned meeting was taking place, he (trial counsel) did not call Barbara Gobel as a witness because she (Barbara Gobel) told him that she observed appellant in the Gilkey house on the night of the crime; trial counsel feared that if a defense witness (Barbara Gobel) placed appellant at the scene of the crime, it might have been necessary for appellant to take the stand (which appellant did not want to do) to explain his conduct on the night in question (in order to avoid the drawing of "adverse inference[s]" by the jurors). Since trial counsel's decision to refrain from calling Barbara Gobel as a witness had a reasonable basis (namely, to avoid the necessity of calling appellant to the stand or alternatively to avoid a possible adverse inference by the jury because of appellant's failure to take the stand), we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

■ Appellant's second contention is that his trial counsel was ineffective on the grounds that he did not call witnesses who (allegedly) would have testified that appellant and John Gilkey took the Gilkeys' four-year old son to a bar subsequent to the shooting of the deceased. Appellant argues that evidence that the Gilkey child was with appellant and John Gilkey in a bar following the shooting is inconsistent with Mary Gilkey's testimony that just prior to the shooting, she removed the child from the kitchen and took him into the living room.

A review of the record indicates that evidence that appellant and John Gilkey took the Gilkey child to a bar following the shooting would not have been inconsistent with Mrs. Gilkey's testimony. Mrs. Gilkey's testimony related to events prior to and including the shooting while the other testimony related to events after the shooting. Thus, trial counsel had a reasonable basis for not calling witnesses who (allegedly) would have testified that the Gilkey child went to a bar with appellant and John Gilkey following the shooting

(namely, that this evidence would not have been inconsistent with Mrs. Gilkey's testimony) and therefore, we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

Appellant's third contention is that his trial counsel was ineffective on the grounds that he did not investigate (or call witnesses concerning) whether Mary Gilkey was on medication (or medication combined with alcoholic beverages) on the night of the crime. Appellant argues that such evidence would have impeached Mrs. Gilkey's testimony wherein she described the events that occurred on the night in question. At the PCHA hearing, trial counsel testified that in preparing for trial, he was aware that Mrs. Gilkey was taking some form of medication in order to treat cancer. Trial counsel testified that he did not investigate whether she took medication on the night of the crime since he feared that if he brought forth evidence at trial that Mrs. Gilkey took medication on said night, it might also be elicited that Mrs. Gilkey had cancer (which this medication was treating). Trial counsel concluded that any testimony that Mrs. Gilkey had cancer "would create sympathy for . . . [Mrs. Gilkey] in the jury's mind and might adversely affect our argument concerning [her] credibility." Thus, trial counsel had a reasonable basis for not investigating (or calling witnesses concerning) whether Mrs. Gilkey was on medication (or medication combined with alcoholic beverages) on the night of the crime and therefore, we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

Appellant's fourth contention is that his trial counsel was ineffective on the grounds that he did not petition for a jury viewing of the Gilkey home. Appellant argues that a viewing could have impeached Commonwealth witness Mary Gilkey's testimony that on the night of the crime, she observed (from the Gilkey kitchen) 1) the deceased lying outside the back door of the house and 2) appellant walking outside the back door of said house with a gun in his hand.

At the PCHA hearing, trial counsel testified that prior to trial, he went to the Gilkey house and examined the Gilkey kitchen (by looking through the windows from the outside). From this examination, trial counsel concluded that Mrs. Gilkey was able to make the aforementioned observations. Thus, trial counsel's decision to not request a jury viewing had a reasonable basis and therefore, we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

Appellant's fifth contention is that his trial counsel was ineffective on the grounds that an oversight by trial counsel allegedly "prohibited" appellant from testifying. At the PCHA hearing, trial counsel testified 1) that when appellant was deciding whether he would testify, trial counsel informed him that he (trial counsel) had (earlier) failed to move for the suppression of a statement which appellant made to his probation officer and 2) that trial counsel told appellant that if he testified, appellant's aforementioned statement to his probation officer could be used to impeach his testimony if his testimony was inconsistent with the statement. Appellant argues that trial counsel's failure to seek the suppression of the statement "prohibited" him from testifying since he [appellant] was afraid that his testimony would be impeached by the statement.[2]

A review of the PCHA record indicates that the fact that appellant (if he testified) could possibly be impeached by his earlier statement was not appellant's overriding concern when he decided not to take the stand. Rather, the main reason that appellant did not testify was his fear of reprisals from the Breed Motorcycle Gang. At the PCHA hearing, trial counsel testified:

> I think the main reason why he [appellant] didn't want to testify was that he feared that if he told his version of what happened that he would face possible reprisals from the other men in the group not just those men who were present at the time but other men who belonged to the Breed Motorcycle Club. All the time, from the very first

2. This statement was not brought forth at trial.

time that I talked with Mr. Treftz [appellant], this I broached to him, the possibility of testifying, telling him that he had a right to testify to what he said happened, and he was always reluctant or unwilling to say that he wanted to testify because of the fear that he had for the consequences from the other members of the group if he did testify. And, in my opinion that was, if not the biggest or if not the only reason why he did not testify or elect to testify, it was certainly one of the most important reasons why he elected not to testify. And I had told Mr. Treftz that when he stated that he was afraid of reprisals, I had told him that if his testimony established a defense that, that should be his primary motivation; that that should be, that should take precedence over whether or not he feared reprisals or retaliation from other members of the Breed.

From these facts, it is clear that the failure of trial counsel to file a motion to suppress did not "prohibit" appellant from testifying. Therefore, we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

■ Appellant's sixth contention is that trial counsel was ineffective on the grounds that he did not argue (in post-verdict motions and on appeal) that the trial court erred in refusing appellant's instruction five:

5. If you determine that Mary Gilkey has falsely testi-fied that she observed Donald Treftz go out the back door of the kitchen with a gun in his possession, then you may disregard or regard as false the whole of the testimony given by Mary Gilkey. *Commonwealth v. Allession [Ales-sio]*, 313 Pa. 537, 545 [169 A. 764].

A review of the record indicates that the trial court read this instruction (almost verbatim) to the jury; hence, an argument by trial counsel that the trial court erred in refusing this instruction would have been frivolous. We affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

■ Appellant's seventh contention is that trial counsel was ineffective on the grounds that he did not argue in post-verdict motions and on appeal that the trial court erred in refusing appellant's instruction six:

6. In assessing the believability of the testimony of Mary Gilkey that she saw Mark (Pockets) Chancellor [the deceased] on the ground at the foot of the back steps, you must consider the admissions of Mary Gilkey on cross-examination that: 1) she was not wearing her glasses when she entered the kitchen of her house on that occasion, 2) she did not see the face of the individual on the ground at the foot of the steps but only observed the individual's hair and dark clothing, 3) it was dark outside and there were no outside lights illuminating the area in which she testified she saw the individual, 4) she saw the individual at the foot of the back steps when she glanced out the back door between the individuals standing in the doorway, 5) the only illumination in the kitchen was a wall light over the sink at the front of the kitchen and a wall light over the table beside the back door, 6) she did not recognize the individual outside as Pockets, 7) she assumed the individual outside was Pockets because she did not see Pockets on the floor of the kitchen or anywhere else in the kitchen on this occasion.

In its instructions, the trial court charged the jury: Your first function is to sift through the testimony in an effort to determine what the true facts are. What happened at this farm on Fennell Road outside of West Middlesex? You are the sole triers of the facts. It is your job and yours alone to decide what the facts are in this case. Now in doing so, you have great discretion. You have the right to believe or not believe as you elect to do. You have the right to believe a portion of a witness's testimony, or disbelieve a portion of a witness's testimony. You have the right to believe all of a witness's testimony or you have the right to believe none of it. It's completely in your discretion to determine from the testimony what the facts are and that is your job and yours alone. And

while, during the course of my charge I may discuss the testimony and one stage I'll review it very briefly with you, the fact remains that it is your job and not mine to recall the testimony and to decide what the facts are. You are the sole triers of the fact.

The trial court did not err in refusing appellant's instruction six. That issue was discussed in the charge and, therefore, we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.

■ Appellant's eighth contention is that trial counsel was ineffective on the grounds that he did not argue in post-verdict motions and on appeal that the trial court erred in refusing appellant's instruction seven:

7. You are not to assume that Mary Gilkey in her testimony at trial has produced evidence against her husband John which may be used to incriminate him in connection with the death of Mark Chancellor (Pockets) [the deceased], and that therefore the testimony of Mary Gilkey is to be believed for the reason that she has produced evidence against her husband which may be used to incriminate him at a criminal trial. The rule of law is that a wife is incompetent to testify against her husband at his criminal trial, and therefore the testimony of Mary Gilkey at this trial cannot be used as evidence against her husband John, if John were to be tried for participation in the death of Mark Chancellor (Pockets).

The trial court charged the jury that in assessing the credibility of Mary Gilkey, it should consider whether she was "coloring her testimony . . . to protect her husband":

[Mary Gilkey's] husband was involved in this [crime]. *Is she coloring her testimony in any way to protect her husband and, if so, does that effect her credibility.* You see that is a factor for you to consider along with all of the other factors in the case and I should say to you, you should scrutinize very closely the testimony of Mrs. Gilkey. But I'll also say to you, if you scrutinize it closely and conclude after such scrutiny that she is telling the truth,

then you have the right to consider her testimony as any testimony in the case. The mere fact that her husband had been involved may not have colored her testimony. It's for you to decide but I would point that out to you because she is the Commonwealth's witness as far as this case is concerned. (Emphasis added)

At the conclusion of its charge, the trial court read the following instruction which was submitted by appellant's trial counsel:

Because the dead body of Mark Chancellor [the deceased] had been found in a wooded area approximately 400 feet directly behind the house occupied by John and Mary Gilkey and because John Gilkey, the husband of Mary Gilkey had been arrested in connection with the Chancellor killing *you may find that Mary Gilkey had an interest in placing the blame and responsibility for Chancellor's death upon someone else other than herself and her husband, John.* If you find that Mary Gilkey has such an interest you must carefully scrutinize the complete testimony of Mary Gilkey in the case. I have already commented on that, it's a correct statement. You should look at her testimony in light of the surrounding circumstances. (Emphasis added)

Thus, trial counsel had a reasonable basis for not arguing that the trial court erred in refusing appellant's instruction seven because the issue was already included in the trial court's charge on two separate occasions. Therefore, we affirm the PCHA court's finding that appellant did not receive ineffective assistance of counsel.[3]

---

**3.** Appellant also argues that prior to trial, he told trial counsel that he "suspected" that Mary Gilkey testified as a Commonwealth witness because she allegedly reached an agreement with the Commonwealth wherein the latter promised her that the Child Welfare Department of Mercer County would not remove Mrs. Gilkey's children from her custody. In this appeal, appellant requests that "an additional hearing [be held] on this matter *if and when* evidence of a deal is discovered" to determine whether trial counsel was ineffective in failing to pursue this matter. (Emphasis added) This request is premature and need not be addressed in this appeal.

The order of the PCHA court denying post-conviction relief is affirmed.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.