404 A.2d 378

**COMMONWEALTH of Pennsylvania**

v.

**Carol MUSI, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1979.

Reassigned April 23, 1979.

Decided July 6, 1979.

Reargument Denied Aug. 20, 1979.

104

Allen N. Abrams, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Sheldon M. Finkelstein, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

Appellant, Carol Musi, was tried before a jury for the shooting death of her husband, a Philadelphia police officer, and was found guilty of murder of the third degree.[1] In this direct appeal from the judgment of sentence imposed upon the verdict, appellant cites three alleged instances of trial counsel's ineffectiveness and one assertion of trial error.[2] After consideration of these claims we are satisfied that they are without merit and affirm the judgment of sentence.

On July 28, 1976, appellant was serving at the bar where she was employed. At approximately 3:00 p. m., she began drinking and continued until 6:00 p. m. At 6:15 p. m., the deceased arrived and joined appellant and they drank together until 8:00 p. m. After leaving appellant's place of employment, the couple proceeded to another bar and stayed until 11:00 p. m. Upon leaving for home, an argument erupted between the two which required the intervention of the police. When they arrived home, the deceased removed some of his clothing and personal effects and entered a pickup truck which was parked nearby. Later, appellant emerged from the house and proceeded to the truck in which her husband was seated, and the argument resumed. Appellant then left the truck and re-entered the house, only to return within a short period of time carrying a rifle. She approached the truck, raised the rifle to her shoulder and shot her husband through the open window of the truck. There was also testimony that appellant had threatened the deceased on the night in question and on previous occasions.

1. This is the second trial of this cause, the first trial resulted in a mistrial because of the inability of the jury to reach a verdict.

2. Post-verdict motions were filed and denied, and appellant was sentenced to two to ten years imprisonment. On December 27, 1977, we granted trial counsel's petition to withdraw and remanded the matter to the trial court for a determination of whether appellant was entitled to appointed counsel. On July 7, 1978, the trial court granted appellant's petition to proceed in forma pauperis and for appointment of counsel.

Appellant testified that she believed the gun was not loaded, and that she was merely attempting to frighten her husband into returning to their house when she placed the rifle through the open truck window. She maintained that the rifle discharged only because her husband grabbed it while she was holding it.

It is by now axiomatic that the test for evaluating a claim of ineffective assistance of counsel is whether the record supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). In making this assessment we are not to employ a hindsight evaluation to determine whether other alternatives may have been more reasonable, *Washington v. Maroney, supra*, but whether there was a reasonable basis for the course of action actually selected. *Commonwealth v. Hosack*, 485 Pa. 128, 401 A.2d 327 (1979); *Commonwealth v. O'Neal Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Treftz*, 485 Pa. 297, 401 A.2d 1325 (1979); *Commonwealth v. Williams*, 485 Pa. 137, 401 A.2d 331 (1979); *Commonwealth v. Tome*, 484 Pa. 261, 398 A.2d 1369, 1371–72 (1979); *Commonwealth v. Betrand*, 484 Pa. 511, 399 A.2d 682 (1979); *Commonwealth v. Perrin*, 484 Pa. 188, 398 A.2d 1007 (1979); *Commonwealth v. Ray*, 483 Pa. 377, 396 A.2d 1218 (1979); *Commonwealth v. Yocham*, 483 Pa. 478, 397 A.2d 766 (1979); *Commonwealth v. Chumley*, 482 Pa. 625, 394 A.2d 497 (1978); *Commonwealth v. Coleman*, 482 Pa. 581, 394 A.2d 474 (1978); *Commonwealth v. Sisco*, 482 Pa. 459, 393 A.2d 1197 (1978). If a reasonable basis for counsel's trial strategy decision exists, that decision is imputed to the client. *Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608, *cert. denied*, 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973). Moreover, the fact that an ineffective assistance of counsel claim is entertained in a direct appeal, rather than in a collateral attack upon a judgment of sentence,[3] does not relieve the

---

3. A claim for post conviction relief must be established by the party asserting the ground. The burden of establishing the ground upon

party asserting the claim of providing a record which will support the contention.[4]

Appellant argues that trial counsel was ineffective because of his failure to request that the jury be instructed as to homicide by misadventure. If there was evidence in the record that would support a jury finding of an accidental excusable killing, the defense would certainly be entitled to such a charge, *Commonwealth v. Beach*, 438 Pa. 37, 264 A.2d 712 (1970), and the failure to make such a request would cast serious question upon the quality of representation given by counsel. The difficulty with appellant's argument in this case is that accepting the version of the facts most favorable to her position they would not constitute a homicide of misadventure.

In *Commonwealth v. Flax*, 331 Pa. 145, 156–157, 200 A. 632, 637–638 (1938), we defined an accidental killing which would relieve the actor of the criminal responsibility for the death as being:

. . . the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. "Three elements enter into the defense of excusable homicide by misadventure: (1) The act resulting in death must be a lawful one; (2) It must be done with reasonable care and due regard for the lives and persons of others; and (3) The killing must be accidental and not intentional, or without unlawful intent,

which post conviction relief is requested rests on the person seeking that relief. *See* 19 P.S. § 1180–1 et seq.; *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976); *Commonwealth v. London*, 461 Pa. 673, 337 A.2d 822 (1975); *Commonwealth v. Walker*, 460 Pa. 658, 334 A.2d 282 (1975); *Commonwealth ex rel. Johnson v. Rundle*, 440 Pa. 485, 270 A.2d 183 (1970).

4. Where one seeks to raise a claim of ineffective assistance on direct appeal and an enhanced record is required to support the claim, the proper procedure is to request a remand for an evidentiary hearing. *Commonwealth v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth·v. Moore*, 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Jackson*, 457 Pa. 237, 324 A.2d 350 (1974).

or without evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve in guilt. Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state, or unlawfully striking another with an intent to hurt, although not with an intent to kill, or driving an automobile at an unlawful rate of speed". (citations omitted).

The defense's version at trial was that appellant raised the rifle to her shoulder and pointed it at the decedent in order to "scare the hell out of him". Claiming that she thought the rifle was unloaded, she aimed it at the decedent and said, "Now get the f___ in the house before you wreck our lives" and that the decedent struck the weapon causing it to discharge. Thus appellant concedes that the killing occurred while she was committing the act of pointing the rifle at the victim. The law of this jurisdiction is clear that it is unlawful to point a firearm at another, whether loaded or unloaded. *Commonwealth v. Jackson*, 464 Pa. 292, 346 A.2d 746 (1975). *Commonwealth v. Chruscial*, 447 Pa. 17, 288 A.2d 521 (1972) (pointing a firearm at another human being, even to scare, is not a lawful act in Pennsylvania).[5] Appellant stresses the fact that she was under the impression that the weapon was unloaded. While this fact, if believed, would support the premise that the killing was unintentional, that alone does not satisfy a finding that it was an excusable homicide. As noted in *Commonwealth v. Flax, supra*, "even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act . . . ." *Id.* 331 Pa. at 157, 200 A.2d at 638.

5. *See* 18 Pa.C.S.A. § 2701(a)(3); 18 Pa.C.S.A. § 1705. Appellant's reliance upon *Commonwealth v. Beach*, 438 Pa. 37, 264 A.2d 712 (1970) is clearly misplaced. In that case the defense testimony, if believed, would have provided a lawful purpose for the defendant's contact with the weapon causing the death.

Therefore, since the testimony did not warrant a charge as to homicide by misadventure, defense counsel's failure to request such a charge is obviously not a basis for finding ineffective assistance of counsel. *Commonwealth v. Wilson*, 482 Pa. 350, 393 A.2d 1141 (1978); *Commonwealth v. Gray*, 473 Pa. 424, 374 A.2d 1285 (1977); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Where a claim is not meritorious it is not ineffective assistance not to pursue it.

■ Appellant also challenges trial counsel's failure to seek a charge to the jury on involuntary manslaughter. A review of the testimony offered in the case would suggest there did exist rational basis for a verdict of involuntary manslaughter. Thus either under the theory of *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977) or *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977), a trial judge would have been required to give the requested charge in this case, if he had been requested to do so. We therefore must look to see if there was any trial strategy, designed to effectuate the best interest of the client, that might move a trial counsel in the instant situation not to make such a request.[6]

■ We have already noted, accepting the version of the facts most favorable to the defense, the appellant was at least guilty of reckless or grossly negligent conduct which was the legal cause of the death. In the charge given by the court, the jury's alternatives were confined to either finding a malicious killing (i. e., murder), an intentional killing resulting from provocation and passion or an acquittal. Thus if the jury had accepted the version of the defense, it could properly have returned a verdict of not guilty. If, however, trial counsel had sought and obtained a charge as to involuntary manslaughter, the option of an outright ac-

6. Before inquiring into the basis for counsel's failure to raise or pursue a certain issue or claim at trial, we must determine if the issues or claim is of arguable merit. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Here such an inquiry is required since appellant would have been entitled to such a charge, if requested.

quittal on this record would have been eliminated.[7]  In view of the presence of this legitimate reason for electing not to request a charge that would virtually end all hope of an acquittal, we cannot conclude as urged by appellant that counsel's decision was without a reasonable basis to effectuate his client's best interests.  *Commonwealth v. McGrogan*, 449 Pa. 584, 297 A.2d 456 (1972).[8]

■  The final claim of ineffectiveness of trial counsel is based upon his failure to raise in post-verdict motions the legality of the search of appellant's premises and the subsequent seizure of a .22 calibre rifle.  This issue must be considered in two steps, whether there was probable cause for the issuance of the warrant and then it must be determined whether the execution of the search warrant was proper.  Addressing first the adequacy of the affidavit supporting the warrant, appellant argues that the search was premised upon "double hearsay" and thus invalid.  The affidavit set forth that an eyewitness to the shooting told one of the investigating detectives at the scene that appellant re-entered the house with the rifle.  That officer, rather than leaving the scene, called this information to a fellow officer who completed the paper work and secured the warrant.  Appellant argues that we condemned this type of double hearsay in *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972) and should hold that the rifle obtained pursuant to a search authorized in this manner must be suppressed.

It is apparent that appellant has misconstrued the language of our opinion in *Garvin*.  In *Garvin*, we stated:

**7.**  While we recognize the jury has the power to return a verdict of acquittal in every case, *Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977); *Commonwealth v. Goins*, 457 Pa. 594, 321 A.2d 913 (1974); *Commonwealth v. Motley*, 448 Pa. 110, 289 A.2d 724 (1972); *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972), counsel cannot be faulted for providing a legal basis for requiring a verdict.

**8.**  It has not been questioned that a state-created substantive right of a charge on involuntary manslaughter is a matter for trial strategy. *Commonwealth v. McGrogan*, 449 Pa. 584, 589, 297 A.2d 456 (1972).

The pertinent testimony in the instant case revealed that Officer Covotta of the Philadelphia Police Department received a telephone call at approximately 2:40 P.M. on September 4, 1969. The call was from an informant who was known to the officer and who had supplied him with information during the past five years leading to six arrests and six convictions. However, with regard to this particular call, the record is contradictory and inadequate as to what portion of the information had been obtained by the informant's personal observation, if any, and what portion had been received by the informant from a third person who sought anonymity to avoid retaliation. *The requirement of a determination of the trustworthiness of the source of the information cannot be met solely because it is channelled through an informant known to be reliable. While it may properly be assumed that the informant passed upon the reliability of the third person supplying the information to him, the law makes it most clear that it is not his judgment to make. As the Supreme Court in Aguilar, supra, did not permit the officers to make the determination for the issuing authority we cannot permit the officer in a warrantless arrest to delegate his responsibility to the informant. To accept without question the messages of alleged eyewitnesses relayed through informants would be to totally disregard the Supreme Court's mandates.* From the information received in the phone conversation, the officer was only aware that an unknown third person, who allegedly witnessed some portion of the robbery, identified one of the two participants as a man who was then walking on a particular street two blocks from the district at the time of the call. When the officer arrived at the specified location there was nothing about the behavior of the appellant which would have furnished a basis for taking him into custody, and even though the record indicated the officer had been furnished with an identification by the victims, there is no testimony to suggest that he considered this information when he approached the appellant. On this record we find that the

arrest of the appellant was illegal. Id., 448 Pa. at 263–64, 293 A.2d at 36 (italics added).

Appellant extracts only the italicized portion of the quote and ignores the context in which these comments were made. In *Garvin*, we were confronted with information based upon double hearsay when it reached police officials. We expressly pointed to the fact that the evil in such a case was that there was no basis for the police to assess the reliability of the initial source of the information. Here a police officer received the information directly from an eyewitness to the event. Therefore, there is no question as to how the information was obtained by the witness nor can there be any serious challenge here to that witness's reliability.[9] Thus, to reach appellant's position we would be required to find that police officials could not rely upon information relayed to them by other members of the department during the performance of their duties. Such a rule would not only unduly hamper police administration but would serve no useful purpose in assuring the reliability of the information acted upon.

The concept of evaluating the police operation as a collective function as opposed to an individual one is not new. For instance, we have held that it is unnecessary for an arresting officer to have knowledge of the information which supported the probable cause of a warrantless arrest, provided that the officer issuing the order to arrest had sufficient information to act. *Commonwealth v. Kenney*, 449 Pa. 562, 566–567, 297 A.2d 794, 796 (1972). *See also Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1975). Here, the officer supplying the information for the affidavit possessed the requisite information to satisfy the probable cause requirements. The fact that he delegated the responsibility of placing this information in affidavit form and the securing of the warrant from the issuing authority is of no consequence, where the affidavit accurately reflects the

---

**9.** The affidavit contained the name, age, race, sex and address of the witness, who was the next door neighbor of the appellant and her husband.

information possessed by the officer and that information satisfies the probable cause requirement.

Having concluded that the affidavit did set forth probable cause for the search and did provide sufficient information upon which an issuing authority could find the reliability of the source of that information, it cannot be successfully maintained that counsel was ineffective for failing to pursue the issue. A finding of ineffectiveness cannot be premised upon counsel's failure to pursue and preserve an obviously meritless issue. *Commonwealth v. Martin*, 479 Pa. 63, 68, 387 A.2d 835 (1979); *Commonwealth v. Smith*, 478 Pa. 76, 80, 385 A.2d 1320 (1979); *Commonwealth v. Hubbard, supra,* and cases cited therein.

The second aspect of this argument relates to the manner in which the warrant was executed. A copy of the warrant and affidavit was not served upon either appellant, the alleged possessor of the item seized, or the persons upon the premises at the time of the search.[10] The suppression court initially found that Pa.R.Crim.P. 2008(a)[11] had been violated and entered an order suppressing the introduction of the rifle at trial. After a petition by the Commonwealth to reconsider the suppression court reversed its original order and held that although there had been a rule 2008(a) violation, this fact did not require that the fruits of the search to be suppressed.

**10.** The defense witness testified that one of appellant's minor sons present at the time of the search demanded that a search warrant be produced and that the request was ignored. The officer conducting the search testified he believed, *but was not certain*, that he served a copy upon the son, there being no adults present in the home at the time. It was conceded that although appellant was in custody, and therefore available, she was not served with the warrant and affidavit.

**11.** Pa.R.Crim.P. 2008(a) provides:
(a) A law enforcement officer, upon taking property pursuant to a search warrant, shall leave with the person from whom or from whose premises the property was taken a copy of the warrant and affidavit(s) in support thereof, and a receipt for the property seized. A copy of the warrant and affidavit(s) must be left whether or not any property is seized.

Thus, framed in an ineffective assistance claim perspective the issue presented is whether counsel should have pursued the question on post-verdict motions. Normally, a resolution of the issue so framed would be dependent upon a determination as to whether the question constituted an arguable issue and whether there existed strategy that would justify abandoning it, rather than a determination as to the ultimate validity of the proposition. *Commonwealth v. Hubbard, supra.* However, since the question presented is of importance and has yet to be considered by this Court, *see Commonwealth v. Walls,* 255 Pa.Super. 1, 386 A.2d 105 (1978), and the record before us is one which is sufficient for us to make a decision upon the merits of the contention, we are satisfied that it is appropriate that we do so. If we were to limit the inquiry as to whether counsel was ineffective in abandoning this argument and determined that he was, the remedy in the first instance would not be the award of a new trial but rather the allowance of an opportunity for the question to be decided upon its merits. Restated, if appellant prevailed in her ineffective assistance claim, that fact would merely provide her with a basis for avoiding a waiver of the issue; the ultimate relief she seeks—a retrial and a suppression of the rifle—would be dependent upon a final determination on the merits of the claim. We are satisfied that in such a posture it is jurisprudentially sound to reach the merits of the question as to whether the rule 2008(a) violation required the suppression of the fruits of the search in this case.

A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence, *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Commonwealth v. Sexton,* 485 Pa. 17, 400 A.2d 1289 (1979), or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (decided June 5, 1979); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38

L.Ed.2d 561 (1974); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).[12] Experience does not suggest there has been such a widespread and flagrant abuse of rule 2008(a) that would require the fashioning of a *per se* exclusionary rule for its violation. *See e. g. Mapp v. Ohio, supra.* Therefore, the imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon the relationship of the violation to the reliability of the evidence seized. Here, there was probable cause for the entry and search and there is no dispute that the rifle was in fact found on the premises described in the warrant and seized pursuant to that search. Thus, appellant's rights were not prejudiced by the officer's failure to fully comply with the mandates of the rule.

Federal cases interpreting a comparable rule of criminal procedure, *see* Rule 41(d) of the Federal Rules of Criminal Procedure, have concluded that although important, the procedures required for execution and return of the warrant are ministerial and that irregularities should not void an otherwise valid search absent a showing of prejudice. *See e. g. U. S. v. Hall,* 505 F.2d 961 (3d Cir. 1974); *In Re Ellsberg,* 446 F.2d 954 (1st Cir. 1971); *U. S. v. McKenzie,* 446 F.2d 949 (6th Cir. 1971); *U. S. v. Klapholz,* 230 F.2d 494 (2d Cir. 1956) *cert.* denied 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454. We accept the wisdom of this approach and hold that where, as here, appellant has failed to demonstrate that she was prejudiced from the violation of this rule a request to suppress the fruits of the search is not justified. *See also State v. Stachler,* 570 P.2d 1323 (Hawaii 1977); *see generally State v. Cymerman,* 135 N.J.Super. 591, 343 A.2d 825 (1975).

12. A third rationale underpinning the exclusionary rule concerns preserving the integrity of the judicial system. *Mapp v. Ohio,* 367 U.S. 643, 660, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *Dunaway v. New York,* 442 U.S. 200, 217–218, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979). This concern is appropriate where 'the police practice, although not widespread, is still particularly reprehensible. The activities of the police officers in the instant case do not fall within that concern.

■ The last issue, which we will treat as properly preserved for review,[13] is the trial court's failure in admitting testimony regarding the violent character of the decedent. This argument is based upon our decisions in *Commonwealth v. Scott,* 480 Pa. 50, 389 A.2d 79 (1979) and *Commonwealth v. Stewart,* 461 Pa. 274, 336 A.2d 282 (1975). The theory of the *Scott* and *Stewart* cases was that where an accused is attempting to negate an inference of malice by asserting a motivation of fear or panic, this type of evidence is relevant to establish the basis for the fear or panic. In this case, by her version of the occurrence, apellant was not in fear of an assault by the deceased, but rather emerged from the safety of her home, with the rifle, for the purpose of scaring the deceased and forcing him to return to their home. Even at the moment of the firing appellant does not charge that she fired in fear or panic but rather asserted that it was accidental. It is therefore apparent that *Scott-Stewart* rationale was inapplicable and the trial court was correct in ruling that the proffered testimony was irrelevant.

Judgment of sentence affirmed.

O'BRIEN, J., did not participate in the consideration or decision of this case.

LARSEN, J., agrees with the opinion and joins therein except that he would find that the final issue was also waived.

ROBERTS, J., filed a dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

**13.** Although appellant failed to raise the issue in her post-verdict motions, in violation of Pa.R.Crim.P. 1123(a), *see Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975) the question was apparently alluded to in the appellant's brief (which is not a part of the record) and referred to in the trial court's opinion. *See Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978); *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977). *But see, Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979).

118

ROBERTS, Justice, dissenting.

The majority concedes that under either *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) or *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977), appellant would have been entitled upon request to an instruction on involuntary manslaughter. Nonetheless, the majority concludes trial counsel who failed to request an involuntary manslaughter instruction was not ineffective. I dissent.

The majority purports to find support in *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972). In my view, the majority reads *McGrogan* far too broadly. It is true that in *McGrogan* this Court rejected a claim trial counsel was ineffective in failing to request a voluntary manslaughter instruction, even though the appellant contended the Commonwealth's case would support the charge. "[C]ounsel could have reasonably decided that the jury might find the Commonwealth's evidence inconclusive and thus return a verdict of outright acquittal." 449 Pa. at 590, 297 A.2d at 459. But crucial to *McGrogan* was the fact that "[t]he evidence of the Commonwealth, although substantial, was somewhat conflicting as to appellant's conduct at the time of the slaying." *Id.*

Here, by contrast, the record establishes that the Commonwealth's case against appellant, including eyewitness testimony, squarely subjected appellant to a conviction of murder. Indeed, as the majority points out, "[t]here was also testimony that appellant had threatened the deceased on the night in question and on previous occasions." *Ante,* 486 Pa. at 106, 404 A.2d at 380. Though trial counsel defended on the theory that the killing was accidental, and appellant so testified, any expectation of an acquittal on this record was unrealistic. Counsel's decision to subject appellant to a contest on her credibility without asking the court to give the jury the permissible option to return a verdict on involuntary manslaughter had no "reasonable basis designed

to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605, 235 A.2d 349, 352 (1967). Appellant should be granted a new trial.

I must also express my disagreement with the majority's assertion that exclusion of evidence seized in violation of the provisions of Pa.R.Crim.P. 2008(a) depends only on the relationship of the · violation of the reliability of the evidence seized. Rule 2008(a) requires police to make a copy of the affidavit in support of probable cause and an inventory of the property seized readily and immediately available to the accused. This rule not only permits defendants to determine in the early stages of criminal proceedings how or whether to pursue a claim that the evidence seized should be suppressed. It also has the beneficial and administratively wise effect of eradicating the need for utilization of court time in discovery motions and continuances to provide time for the defense to study the affidavit and inventory once it is obtained. Where the rights of an accused to suppress evidence illegally seized are prejudiced by violation of Rule 2008, exclusion of the evidence is required regardless of its otherwise reliable nature. This is, indeed, the mission of our Rule.

MANDERINO, Justice, dissenting.

I dissent. There was no reasonable basis in this case for trial counsel's failure to request an instruction on involuntary manslaughter.

In *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977), this Court addressed the question of whether the trial court in a homicide case could refuse to give a requested jury instruction on involuntary manslaughter. A majority of this Court concluded that Polimeni was entitled to the requested charge on involuntary manslaughter even though he was not indicted for involuntary manslaughter. We

therefore reversed the judgment of sentence and remanded for a new trial.

Involuntary manslaughter is defined by the Crimes Code, 18 Pa.C.S.A. § 2504(a) (1973).

"(a) General rule.—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

Had the jury believed appellant's version of the facts presented in this case, it could have rationally concluded that appellant was guilty of the crime of involuntary manslaughter. Because appellant's trial counsel failed to request such a jury instruction, however, the jury was not informed that involuntary manslaughter was a permissible verdict in this case.

We have often said that counsel's strategy must have some reasonable basis designed to effectuate the client's interests. The majority strains to find a reasonable basis for trial counsel's trial strategy. The majority says that if trial counsel had sought and obtained a charge on involuntary manslaughter, the option of an outright acquittal would have been eliminated. The majority also says that "the jury's alternatives were confined to either finding a malicious killing (i. e., murder), an intentional killing resulting from provocation and passion or an acquittal." However, this Court has said:

"True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must as a theoretical matter, return a verdict of acquittal. But the defendant is entitled to a lesser offense instruction—in this context or any other—precisely because [the defendant] should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in

doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.

*Keeble v. United States,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973) (emphasis in original); see *Commonwealth v. Thomas,* 403 Pa. 553, 170 A.2d 112 (1961). The jury should not be forced to choose between a murder or voluntary manslaughter verdict and an acquittal when, properly instructed, the jury would find the defendant guilty of involuntary manslaughter." (Emphasis in original.) *Commonwealth v. Garcia,* 474 Pa. 449, 466–67, 378 A.2d 1199, 1208 (1977).

I can therefore perceive of no reasonable basis for allowing this case to go to the jury without requesting that the jury be instructed regarding the crime of involuntary manslaughter. Indeed, appellant's entire case pointed toward such a verdict: she admitted that she held the rifle that fired the fatal shot; she did not contend that she shot in self-defense. She contended only that she was not aware that the rifle was loaded; that she intended only to frighten her husband; and that the rifle discharged when her husband grabbed it.

The prosecution argues that at the time of appellant's second trial—May 9 through May 17, 1977, appellant " . . . had no right to have the court charge the jury on involuntary manslaughter . . ." because *Commonwealth v. Polimeni, supra* had not yet been decided (*Polimeni* was decided on October 7, 1977). According to the prosecution, appellant's trial counsel acted reasonably in relying on the then existing law; that raising appellant's present claim at that time would have been fruitless, and that counsel is not required to pursue a fruitless claim.

Appellant's trial, however, took place more than eighteen months *after* our decision in *Commonwealth v. Moore,* 463 Pa. 317, 344 A.2d 850 (1975). Had appellant's trial counsel been familiar with *Moore,* it would have been apparent that at least four members of this Court had expressed the view at that time that failure to instruct on involuntary man-

slaughter, if requested, where that verdict would be supported by the evidence, constituted reversible error.

"Thus, if a jury, giving credence to a defendant's version of an encounter could find that defendant guilty of involuntary manslaughter, fundamental fairness dictates the consolidation, upon request, of that indictment with the murder and voluntary manslaughter indictments as possible jury verdicts. As noted in *Commonwealth v. Thomas,* supra, the failure to consolidate leads to a refusal to instruct the jury on involuntary manslaughter. In those instances where an involuntary manslaughter verdict would be supported by the evidence, the failure to so acquaint the jury prevents it from operating with full knowledge of the relevant law and precludes the defendant from having a fair trial." *Id.*, 463 Pa. at 322, 344 A.2d at 852–853. (Opinion of Justice (now Chief Justice) Eagen, joined by O'Brien, J.)

Mr. Justice Roberts stated in a concurring opinion,

"In my view, the trial court's failure to instruct the jury on involuntary manslaughter, as requested by appellant, constitutes reversible error.

.  .  .  .  .

It is axiomatic that a trial court is required, at least when the defendant so requests, to illuminate all relevant legal issues for the jury and, in particular, to instruct the jury on every verdict which it would be permissible for it to return." *Id.*, 463 Pa. at 323–324, 344 A.2d at 853.

Mr. Justice Pomeroy, also concurred, saying,

"I concur in the decision of the Court that the trial court erred in refusing appellant's motion to consolidate for trial the murder and involuntary manslaughter indictments. Furthermore, I agree with my brother Roberts in his separate opinion that the failure of the trial court to charge as requested on involuntary manslaughter was also error." *Id.*, 463 Pa. at 336, 344 A.2d at 860.

Thus it is clear, contrary to the prosecution's contention, that appellant's trial counsel should have known at the time

of her trial that a majority of this Court felt that to deny a request for a jury charge on involuntary manslaughter constituted reversible error, at least where there were facts in evidence on which the jury could have rationally based a verdict of guilty of involuntary manslaughter. Trial counsel's failure to request such a charge, especially in light of the facts presented by the defense in the instant case, all of which pointed toward a finding that appellant shot and killed her husband while attempting to frighten him with a rifle she believed to be unloaded, facts which, if believed by the jury, would have allowed it to rationally find appellant guilty of involuntary manslaughter.