J-S24015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CASSIUS WATSON | |
| Appellant | No. 2429 EDA 2014 |

Appeal from the Judgment of Sentence May 2, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002469-2013

BEFORE:  GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JUNE 12, 2015**

Appellant, Cassius Watson, appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas, following his jury trial conviction for persons not to possess firearms.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On March 21, 2013, an employee at Sacred Heart Hospital in Allentown, PA, looked through the window of a residence across the street from the hospital and spotted Appellant holding a pistol.  The employee called the police to report what she saw.  The responding officers noticed security cameras around the residence and heavy books stacked up behind the front windows. The officers knocked on the door, and Appellant answered.  After the officers

---

[1] 18 Pa.C.S.A. § 6105.

relayed the information they had received over police radio, Appellant initially claimed he did not have a gun and invited the officers into the residence. When one officer asked about guns again, Appellant said he had guns but they were "legal" and belonged to his sister. Appellant also admitted he had been arrested for homicide years ago and was not allowed to own a gun. The officers left and reported this information to Detective Almonte, who confirmed Appellant had a prior manslaughter conviction.

At around 6:00 a.m. on March 22, 2013, Detective Almonte and Detective Mriss set up surveillance near Appellant's home. The detectives observed Appellant drive away and return to the residence shortly thereafter. When Appellant returned, the detectives advised Appellant they were obtaining a search warrant for the residence based on information the police had learned the previous day. After Detective Almonte secured the warrant at 8:33 a.m.,[2] the search began. The police recovered four guns inside the residence. Appellant admitted the guns belonged to him. Detective Mriss also saw a bag of cocaine in the kitchen but did not seize it. The court issued a second search warrant for the drugs on March 22, 2013, at 11:21 a.m. The police executed the warrant at 11:30 a.m. that day and seized the cocaine inside Appellant's home. Detective Almonte also secured

---

[2] The dates on the original warrant were accidentally transposed. The magisterial district court mistakenly indicated that it issued the warrant at 8:33 a.m. on March 24, 2013, and the officers could serve the warrant no later than 8:33 a.m. on March 22, 2013.

a third search warrant the same day for Appellant's vehicle based on Appellant's admission he had five guns in total, but no evidence was found in the car. Detective Almonte did not immediately return the original warrants to the issuing court.

Detective Almonte gave Appellant a handwritten copy of the second warrant package, which included the affidavit of probable cause and an inventory list, after the searches were completed.[3] The affidavit of probable cause stated, *inter alia*, that a search warrant had already been executed on Appellant's residence on March 22, 2013, which resulted in the recovery of multiple firearms. Although the second warrant was only for the seizure of drugs, the inventory given to Appellant listed everything seized during both searches of the residence, *i.e.*, the drugs and all of the firearms. The inventory stated that the search took place on March 22, 2013, at 8:33 a.m. Approximately two weeks later, Detective Almonte returned to Appellant's residence and gave Appellant another copy of the second warrant package, which contained a different inventory. This inventory listed only the drugs recovered during the second search and indicated a search time of 11:30 a.m.

On August 9, 2013, Appellant filed an omnibus pre-trial motion,

---

[3] Detective Almonte also gave Appellant a copy of the third warrant package. At the suppression hearing, Detective Almonte could not recall exactly when he gave these copies to Appellant. Appellant testified that he received them while he was in central booking on March 23, 2013, at 2:00 a.m.

including a motion to suppress the evidence seized from his residence. At the suppression hearing on November 18, 2013, Detective Almonte filed the original warrants with the court after he realized he had inadvertently left them in his personal case file. Appellant was given new copies of each warrant. The court denied Appellant's motion to suppress on December 5, 2013.

On March 26, 2014, a jury convicted Appellant of one (1) count of persons not to possess firearms. On May 2, 2014, the court sentenced Appellant to a term of three-and-a-half (3½) to seven (7) years' imprisonment. Appellant filed a post-sentence motion, which the court denied on May 13, 2014. On June 16, 2014, Appellant filed a petition under the Post-Conviction Relief Act ("PCRA"),[4] requesting the court to reinstate his direct appeal rights *nunc pro tunc*. The court granted Appellant's PCRA petition on July 28, 2014. Appellant filed a notice of appeal *nunc pro tunc* on August 15, 2014. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied.

Appellant raises the following issues for our review:

> DID DETECTIVE AMAURY A[L]MONTE VIOLATE PENNSYLVANIA RULES OF CRIMINAL PROCEDURE 208, 209, AND 210 WHEN HE FAILED TO PROVIDE ACCURATE COPIES OF SEARCH WARRANTS FOR [APPELLANT'S] HOME

---

[4] 42 Pa.C.S.A. §§ 9541-9546.

TO [APPELLANT] AND WHEN HE FAILED TO FILE THE ORIGINAL SEARCH WARRANTS WITH THE COURT?

DID [APPELLANT] SUFFER PREJUDICE AS A RESULT OF DETECTIVE A[L]MONTE'S VIOLATIONS OF THE RULES OF CRIMINAL PROCEDURE BECAUSE [APPELLANT] FILED A PRETRIAL SUPPRESSION MOTION AND PREPARED FOR THE SUPPRESSION HEARING BELIEVING THAT THE SEARCH OF HIS HOME WAS WITHOUT A WARRANT, WHEN THE COMMONWEALTH SOUGHT TO PROVE THAT THE ENTRY WAS LEGAL BASED ON AN ALLEGEDLY VALIDLY ISSUED SEARCH WARRANT, A COPY OF WHICH WAS NEVER PROVIDED TO [APPELLANT], AND THE ORIGINAL OF WHICH WAS NOT AVAILABLE TO [APPELLANT] BECAUSE DETECTIVE A[L]MONTE NEVER FILED THE WARRANTS WITH THE COURT?

(Appellant's Brief at 1-2).

In his issues combined, Appellant argues the police violated Pa.R.Crim.P. 208 when they failed, prior to the suppression hearing, to provide Appellant with accurate copies of the search warrants and inventories for the searches of Appellant's residence. Appellant contends that after the police completed the searches of his residence and car, they gave Appellant an inaccurate copy of the warrant corresponding to the initial 8:33 a.m. search of the residence. Appellant avers this copy indicated the warrant was signed at 11:21 a.m. and the search was conducted at 8:33 a.m. Appellant claims the trial court unjustifiably found the discrepancy arose because the issuing court filled out both the original warrant and the copy by hand rather than use copy equipment. Appellant asserts the misinformation in the copy led him to believe the initial search of his residence was conducted without a warrant, and he prepared his motion to

suppress accordingly. Appellant submits he did not receive an accurate copy of the first warrant, which indicated the court approved the warrant at 8:33 a.m. in support of the 8:33 a.m. search, until the suppression hearing. Appellant contends, with respect to the second search of his residence, that the inventory list for the actual warrant differed from the inventory list attached to Appellant's copy of that warrant.

Appellant further argues Detective Almonte mistakenly failed to file the original warrants and inventories with the court until the detective testified at the suppression hearing. Appellant maintains the detective's failure to file the warrants and inventories in a timely manner violated Pa.R.Crim.P. 209 and 210 and deprived Appellant of an opportunity to inspect the original documents before the suppression hearing. Appellant submits compliance with Rules 209 and 210 is important not only to secure the rights of the accused but also those rights of innocent third parties who have an interest in the legality of the government's search of a property.

Appellant argues the multiple violations of the Rules of Criminal Procedure in this case caused him substantial prejudice by forcing him to rely on inaccurate information going into the suppression hearing. Appellant claims he was prepared to argue whether the initial search of the residence was justified without a warrant, which is a different challenge than whether the warrant-based search was proper. Appellant concludes the court should have suppressed the firearms recovered under the warrants. We disagree.

We review the denial of a suppression motion subject to the following principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

Pennsylvania Rule of Criminal Procedure 208 provides as follows:

### § 208. Copy of Warrant; Receipt for Seized Property

(A) A law enforcement officer, upon taking property pursuant to a search warrant, shall leave with the person from whom or from whose premises the property was taken a copy of the warrant and affidavit(s) in support thereof, and a receipt for the property seized. A copy of the warrant and affidavit(s) must be left whether or not any property is seized.

(B) If no one is present on the premises when the warrant is executed, the officer shall leave the documents specified in paragraph (A) at a conspicuous location in the said premises. A copy of the warrant and affidavit(s) must be left whether or not any property is seized.

(C) Notwithstanding the requirements in paragraphs (A) and (B), the officer shall not leave a copy of an affidavit that has been sealed pursuant to Rule 211.

Pa.R.Crim.P. 208. Rule 209 also governs procedure following execution of a

search warrant and states:

### § 209. Return with Inventory

(A) An inventory of items seized shall be made by the law enforcement officer serving a search warrant. The inventory shall be made in the presence of the person from whose possession or premises the property was taken, when feasible, or otherwise in the presence of at least one witness. The officer shall sign a statement on the inventory that it is a true and correct listing of all items seized, and that the signer is subject to the penalties and provisions of 18 Pa.C.S. § 4904(b)—Unsworn Falsification To Authorities. The inventory shall be returned to and filed with the issuing authority.

(B) The judicial officer to whom the return was made shall, upon request, cause a copy of the inventory to be delivered to the applicant for the warrant and to the person from whom, or from whose premises, the property was taken.

(C) When the search warrant affidavit(s) is sealed pursuant to Rule 211, the return shall be made to the justice or judge who issued the warrant.

Pa.R.Crim.P. 209.[5] Rule 210 states as follows regarding the filing of a

returned search warrant:

### § 210. Return of Papers to Clerk

The judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the

_____

[5] This text represents the version of Rule 209 in effect when the police executed the search warrants and the court held the suppression hearing. Subsequent amendments to Rule 209 took effect on January 1, 2014.

> inventory with the clerk of the court of common pleas of the judicial district in which the property was seized.

Pa.R.Crim.P. 210.

Exclusion or suppression of evidence is not an appropriate remedy for every violation of the Rules of Criminal Procedure concerning searches and seizures. ***Commonwealth v. Mason***, 507 Pa. 396, 490 A.2d 421 (1985). A technical failure to comply with a rule will not automatically result in the exclusion of evidence seized. ***Commonwealth v. Gentile***, 632 A.2d 573 (Pa.Super. 1993). "It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion **may** be an appropriate remedy." ***Mason, supra*** at 406-407, 490 A.2d at 426 (emphasis in original). ***See also Commonwealth v. Musi***, 486 Pa. 102, 404 A.2d 378 (1979) (stating officer's failure to serve defendant with copy of warrant pursuant to Rule 208 did not require suppression of evidence seized during search); ***Commonwealth v. Graham***, 482 A.2d 1277 (Pa.Super. 1984) (holding officer's failure to comply fully with Rule 209 did not require suppression of evidence seized pursuant to warrant); ***Commonwealth v. Ryan***, 407 A.2d 1345 (Pa.Super. 1979) (holding issuing court's failure to forward warrants to clerk of courts in compliance with Rule 210 was administrative error and did not require suppression of evidence seized).

Additionally:

> [N]either the [trial] court nor the Superior Court has the

> power to fashion a rule that requires the exclusion of evidence because of a violation of a Rule of Criminal Procedure. The general supervisory and administrative authority over all the courts is vested solely in the Supreme Court of Pennsylvania and if such a rule is to be promulgated or the present rule amended it is within the jurisdiction of the Supreme Court.

*Mason, supra* at 402, 490 A.2d at 423-24.

Instantly, Appellant told the officers, who initially arrived at his residence, about the presence of firearms in the home. Detective Almonte subsequently confirmed Appellant had a prior manslaughter conviction. Detectives Almonte and Mriss arrived at Appellant's residence on the morning of March 22, 2013, and explained the purpose of their investigation. The detectives informed Appellant they were securing a search warrant to search for firearms in Appellant's home. The magisterial district court issued the first warrant on March 22, 2013, at 8:33 a.m. The police immediately executed the warrant and recovered several firearms. Based on Detective Mriss' observation of a bag of cocaine during the search, the police secured a second warrant for drugs at 11:21 a.m. that same day.

Detective Almonte gave Appellant a copy of the second warrant no later than the following day. The copy indicated the warrant was issued at 11:21 a.m. Appellant did not immediately receive a copy of the first warrant, and the inventory attached to his copy of the second warrant indicated a search time of 8:33 a.m., which corresponded to the first search. Nevertheless, the inventory listed all items recovered from **both** searches of

Appellant's residence. Appellant's copy of the affidavit of probable cause for the second search also referenced the first search of Appellant's residence and the firearms recovered during that search. Furthermore, prior to the first search, the police informed Appellant they were obtaining a search warrant for firearms in Appellant's residence. Therefore, shortly after the police completed both residential searches, Appellant knew or had reason to know the purpose of the searches and that they were warrant-based. As early as the day after the searches were executed, Appellant had a complete and accurate list of all evidence seized. Appellant ultimately had the opportunity to review the original first and second warrants at the suppression hearing, and defense counsel cross-examined Detective Almonte on the content of both warrants. Suppression of the evidence was not an appropriate remedy for Detective Almonte's alleged technical failure to comply with Pa.R.Crim.P. 208, which implicated no fundamental constitutional concerns or substantial prejudice to Appellant. *See id.*; *Musi, supra*.

With respect to the purported violations of Rules 209 and 210, the versions of these rules in effect at the time of the suppression hearing contained no language regarding time limits for filing original warrants with the court or clerk of courts. *See* Pa.R.Crim.P. 209; Pa.R.Crim.P. 210. Additionally, in light of Appellant's notice, prior to the suppression hearing, of the warrant-based searches of his residence and the evidence seized,

Appellant incurred no prejudice from Detective Almonte's inadvertent delay in filing the original warrants. ***See Mason, supra***; ***Graham, supra***; ***Ryan, supra***. Appellant had the information he needed to argue his suppression motion. Moreover, we have no authority to dictate a rule that requires exclusion of evidence for a violation of a Rule of Criminal Procedure as alleged. ***See Mason, supra***. Based on the foregoing, we see no reason to disturb the trial court's decision to deny Appellant's motion to suppress on the grounds stated. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2015